BROWN, HUSSEY, AND ERITH *against* HOWARD.

IN ERROR, on *certiorari,* to the justice's court in the city of *New-York.*

In an action of trespass against several joint defendants, if there be no evidence produced against some of them, to implicate them in the trespass, they may be struck off the record, and admitted as witnesses for their co defendants.

But where there is any evidence against them this cannot be done.

The command of a superior to commit a trespass, or other unlawful act, is no justification to his inferior.

The master of a vessel may inflict moderate correction, for sufficient cause, upon his seamen; but should he exceed the bounds of moderation, and be guilty of cruelty, or unnecessary severity, he will be liable as a trespasser.

The defendant in error brought an action, in the court below, against the plaintiffs in error, for an assault and battery and false imprisonment on the high seas, on board she ship *Tea-plant*, on a voyage from *Liverpool* to *New-York*. *Brown*, the master of the ship, pleaded not guilty, and *son assault demesne*, and the other two defendants, who were mates on board of the same vessel, pleaded not guilty, and justified that they acted by the orders of *Brown*, the master.

At the trial in the court below, which was without a jury, five witnesses, who were seamen on board of the same vessel, testified, on the part of the plaintiff below, also a seaman on board, that while it was blowing very hard, and the plaintiff and some others of the hands were engaged in hoisting and belaying the foresail, the captain took up a mallet, and after cursing at them, threatened to knock out their brains if they did not exert themselves more ; that they were then ordered aft by the captain to hoist the mizzen staysail, who having procured a rope about half an inch thick, violently struck the sailors, and attacked the plaintiff below, and gave him eight or ten blows with the rope : that the plaintiff below asked him what he meant by such conduct, whereupon the captain again attacked him, and struck him a number of blows, and then endeavoured to force him to go aloft to slush the skysail mast, a thin spar where there was nothing to hold by but the mast itself, and where, from the roughness of the sea, a man could not go with safety ; that the plaintiff below said that he had been so beaten that he could not hold on, and seized and clung to some part of the rigging, the captain still pulling him with violence, until he forced him away, and both, by the violence of the captain's effort, and the rolling of the ship, fell upon the deck, the captain upon the plaintiff; and, the other two defendants being present all this time, the second mate took the captain off from the plaintiff below, and the captain then ordered the two mates to tie the plaintiff below hand and foot, which they did, and laid him on the quarter deck; that the plaintiff remained bound in this manner, without the power of moving himself, exposed to the inclemency of the weather, in the month of *March*, for five days and nights, except during two nights, when the weather was so very bad that the captain ordered him to be put below : that after this the plaintiff below was asked by the captain if he would do his duty, to which, on replying in the affirmative, he was released, but was afterwards

confined to his birth for some time by rheumatism, and that to
relieve him the captain ordered one of the mates to apply some
remedy to the part affected, which was done accordingly.

A passenger, on board of the vessel at the time, was produced
as a witness on the part of the defendants below, whose testimo-
ny varied from that of the other witnessess principally in this,
that the plaintiff below was compelled, by beating, to let go of
the rigging of which he had taken hold; that he then turned round
and seized the captain by the arm, or hand, and they then fell,
and, as the witness thought, the plaintiff below upon the cap-
tain; that when the captain got up he had a black eye, which
remained for five or six days, and that the language of the
plaintiff below was very improper.  He also stated that the
other two defendants below interfered in no other way than
tying the plaintiff below, by the order of the captain.  The
counsel for the defendants below then moved that the two mates
should be acquitted, and struck out of the record, which the
court refused, the weight of evidence being with the plaintiff
below; and the justice gave judgment for the plaintiff below,
for one hundred and twenty-five dollars.

*Caines*, for the plaintiffs in error, contended, that *Hussey*
and *Erith*, two of the defendants below, the mates of the
ship, ought to have been struck out of the record, and ad-
mitted as witnesses.*  That what they did was in obedience
to the order of the captain; and they were bound to yield
obedience to the lawful commands of their superior.  " It
is a general and sound principle, that whenever the law
vests any person with power to do an act, and constitutes
him a judge of the evidence on which the act may be done,
and, at the same time, contemplates that the act is to be
carried into effect through the instrumentality of agents,
the person thus clothed with power is vested with discretion,
and is, *quoad hoc*, a judge ; and his mandates to his legal agents,
on his declaring the event to have happened, will be a protec-
tion to those agents ; and it is not their duty or business to in-
vestigate the facts thus referred to their superior."†

*Styles*, 401.
*Godbolt*, 326.

The master of a vessel has a right to punish his crew for
disobedience, and they are not to judge of the legality of the
exercise of that right, but are bound to submit, and look to the
law for redress against any abuse of power. This doctrine was

†*Per Spencer*, J.,
11 *Johns Rep.*
158. *Vanderhey-
den* v. *Young*.

ALBANY,
January, 1817.

BROWN
v.
HOWARD.
* 3 Day's Rep.
294.

† Phillip's Law
of Ev. 61.

laid down by *Livingston*, J., in the case of *Michaelson* v. *Denison*,* in the circuit court of the *United States*.

*Anthon*, contra.   No motion was made to strike out the two defendants, *Hussey* and *Erith*, until after evidence had been given on the part of the defendant.   The rule is, that if no evidence has been given against one of two defendants, he may, as soon the plaintiff has closed his case, be a witness for his co-defendant.†   The court below, in this case, no jury being demanded, were judges of the fact as well as the law, and there were five witnesses to one in favour of the plaintiff.   It was proved that the plaintiff was in the performance of his duty, and that the mates were privy to the illegal conduct of the captain. They were not bound to obey an illegal order of the captain, and could not justify themselves by his authority.

THOMPSON, Ch. J., delivered the opinion of the court.   The question arising upon this return is, whether the court below ought to have admitted, as witnesses, *Hussey* and *Erith*, two of the defendants, and who were offered by the other defendant.   There can be no doubt that in actions for *torts*, a defendant, against whom no evidence has been produced, may be examined as a witness for his co-defendant.   But the rule laid down in the books on this question is, that if there is any, even the slightest, evidence, against him, he cannot be discharged as a party, and received as a witness.   The want of evidence against a party, in order to entitle him to be a witness, should be so glaring and obvious, as to afford strong grounds of belief that he was arbitrarily made a defendant to prevent his testimony. (*Phil. Ev.* 61.   *Buller*, 285.)

The evidence fully established the fact, that the persons offered as witnesses, were actually concerned in binding the plaintiff below; and how far they may be considered as implicated in the transaction, will, in a great measure, depend upon the authority of the captain to treat as he did the plaintiff below.

The return states, that all the facts relative to the transaction took place in presence of the two defendants, who were offered as witnesses, and, of course, fully known to them at the time they obeyed the order of the captain, in binding the plaintiff's hands and feet with ropes.   If this was an illegal act in the captain, the mates were not bound to obey him, and cannot excuse

themselves under such order. A master has no right to command his servant to commit a trespass, or do a wrongful or unlawful act. From the facts stated in the return, it appears to me that the conduct of the captain, to say the least of it, was harsh and rigorous, and altogether unjustifiable; and, unless we are warranted in presuming the statement to be, in some degree, coloured by the witnesses who were fellow seamen with the plaintiff below, the conduct of the captain merits severe animadversion.

Although a captain may have a right to inflict corporal punishment upon a seaman under his command, yet it is not an arbitrary and uncontrolled right: he is amenable to the law for the due exercise of it. He ought to be able to show, not only that there was a sufficient cause for chastisement, but that the chastisement itself was reasonable and moderate. (2 *Bos. & Pul.* 224. 3 *Day's Rep.* 285) The rule on this subject is well laid down by *Abbott.* (*On Shipping,* 125.) By the common law, says he, the master has authority over all the mariners on board the ship, and it is their duty to obey his commands in all lawful matters, relative to the navigation of the ship, and the preservation of good order; and, in case of disobedience or disorderly conduct, he may lawfully correct them in a reasonable manner. His authority, in this respect, being analogous to that of a parent over a child, or a master over his apprentice, or scholar. Such an authority is absolutely necessary to the safety of the ship, and of the lives of the persons on board; but it behoves the master to be very careful in the exercise of it, and not to make his parental power a pretext for cruelty and oppression.

Not being able to discover, from the return, the least justification for the captain's treatment of the plaintiff below, and the mates having been acquainted with the whole transaction, I can perceive no ground upon which they can be exonerated as parties, nor, of course, admissible as witnesses. The judgment below must, accordingly, be affirmed.

Judgment affirmed.