O’Xeall J.
delivered the opinion of the Court.
One general distinction between the actions of trespass and case, is, that when the plaintiff’s right of possession is in reversion, the action must be case and not trespass. 1 Ch. Pl. 167. But this contemplates that the party has parted for the time with his entire interest in the thing ; or that the injury is such an one, as only affects the right of the possessor. If the owner reserves a right in his property, or places it in the hands of another, for any qualified purpose, such as carrying or safe keeping, or the use or hire, and it is injured by any immediate, and forcible act, destroying or materially injuring the thing itself, trespass may be sustained. The first branch of the proposition in relation to personal property, is without the sanction of express authority ; but all analogies of the law in relation to land sustain it fully. If a landlord leases land, and in the lease reserves the trees ; and they are cut down either by the tenant, or astrano-er, he can support trespass. Why 1 Because he has reserved the tight. So, if one grant the use of his real estate for a particular purpose, and it is used for a different one, trespass is the proper remedy. As, where a right of way is granted, and the grantee, instead of using it as such, should think proper to destroy it by digging up the soil. The owner in this case has parted with his dominion over the soil for a given purpose; but as to all others it is'reserved ; and hence it is, that for this abuse of his right, he can maintain trespass. He has authorized an *98 entry on, and use of his land, for one thing; but for the act done he has given no license.
There is in England no case where the question could arise in relation to personal property; but in this State, where slaves are a more valuable part of our property, than even land, where they approach nearer to its fixedness and certainty, than any other personal property, and where the hiring of them is analogous to the renting of land, it would seem that it is but reasonable and right to transfer the principles applicable to leases of lands, to contracts for the hire of slaves. In this point of view, therefore, if the owner reserves a right at the time he parts with his property temporarily, and this right is affected by an act, the consequences of which are immediate and not consequential, trespass would lie.
Slaves, according to our law, are chattels personal; and in most respects are governed by the same rules as other personal property: but although they are by the operation of Jaw deprived of all personal rights, yet they are moral agents, subject to the same feelings; and have a right to protection from abuse as other human beings. All natural, civil and acquired rights, which a slave might exercise as a freeman, are necessarily from his situation, transferred as an incident of slavery to his master. Among these rights, one of the most important both to the slave’ and the master, is that of protection. And to protect his slave the master has not only the right to repel force by force, but also the right for any injury done to the person of his slave, even where no actual loss is sustained, to maintain trespass. The case of White v. Chambers, 2 Bay, 70, was an action on the case for beating the plaintiff’s slave, and the Court put the plaintiff’s right to recover, on the ground that all the slave’s natural and civil rights of protection belonged to his master, and that for a violation of this right by beating him, the action would lie. The form of the action was not objected to. The principle of this case has been acted on in a number of subsequent cases. In some of them the form of the action was the question, as in Godard v. Wagner. 1 M’C. 100. Carston v. Murray, Harp. 113. in which trespass was held to be the proper remedy. But they all either expressly or impliedly admit the right of the master to sustain trespass for any battery of his slave.
*99 If then this right of personal protection of the slave belongs to the master, and for its violation he can maintain trespass; it would seem (and perhaps ought always) to be reserved in a contract of hiring : and if reserved and violated, either by the hirer or a stranger, taking the doctrine in relation to the leases of lands as our guide, trespass may be sustained.
In the case of a hired servant, a white man, no doubt- can be entertained, but that against a stranger, for a battery, he might sustain his action for the personal injury, and that the master, if he thereby lost the services of his servant, could maintain his action for this injury to his rights. It is also equally clear, that a hired servant might, for any battery committed on his person by his master, sustain trespass against him. In cases of apprentices of seamen, the master has the right of moderate correction to enforce obedience; but the moment he transcends this line, and punishes for revenge or any other cruel, or malicious motive, the apprentice or seaman can maintain trespass against him. Brown and others v. Howard, 14 Johns. 119. Having stated these general principles, in cases of hired servants, apprentices and seamen, let us apply them' to the case before us.
What rights did the owner transfer to the hirer 1 The right to have the services of his slave for twelve months, and the right to enforce obedience by moderate correction. If a stranger had committed a battery on the slave, none of the rights of the hirer would have been violated, unless he had thereby lost the services of the slave; and for this he would have his action per quod servitium amisit. The right of personal protection belongs to the master, and for the injury done to this right if a hired servant could maintain trespass, unquestionably the master can. The hirer by his contract, acquired the right of enforcing obedience by moderate correction. When he transcended and abused his authority, the right of personal protection in the cases of apprentices and seamen would have intervened, and the same right of protection of his slave belonging to the master, and being reserved, would, I should think, intitle him to maintain the same action which they could maintain.
In this case it would not be difficult to shew that the contract of hiring was ended, at the moment the beating was inflicted. What was the contract? The plaintiff let the services of his slave to the defendant for twelve months, but during that time he was not immoderately to correct her. *100 If he chose to violate this contract on his part, it was a violation of the terms on which the plaintiff had consented he should have the services of his slave, and was no longer binding on him. Indeed, I think in all cases of hiring, the right of moderate correctionis all that the hireracquires, and the moment he abuses this right, the master may treat the contract as ended, and reclaim possession. If these views are correct, and that they are I entertain no doubt, the master here had the right to take possession of his slave, and from the testimony it appears that she did return immediately to his possession : and as a consequence of this right of immediate possession, he could maintain this action.
It is, however, perhaps necessary, to add a farther view of this question, sustained by the analogy of the English cases. It is clear that if the bailee of a beast kill it, trespass will lie. Because, says Chitty, “ he may be considered a trespasser for the wrongful act itself.” 1 Ch. Pl. 171. “ And it seems clear,” says the same author, “ that if one be a bailee, though coupled with a beneficial interest, as of sheep to feed his land or oxen to plough it, and he kill or destroy them, trespass lies ; because his interest therein is thereby determined, the same as where a tenant at will cuts down trees.” Ib. Apply these principles and reasons to this case, and it will be fully sustained. In it thé defendant may be a trespasser for the wrongful act itself. For as in the case put by Chitty, it was not an act arising from the use of the slave, but one of mere wantonness and cruelty. So as in the other case put by him, the defendant’s interest was determined, for the bailee’s interest there was determined by destroying the chattels contrary to the intention of the contract; here the contract expressly denies to him the right to abuse, and, as a consequence, it follows that the assumption of a right not granted to him, or more properly an abuse instead of the use, of the slave, determined his interest.
From this investigation of the case, I conclude that trespass was the proper remedy. It is no objection to say, that the plaintiffmight have sustained case or assumpsit. The case is the same where the' bailee of a beast kills it; there the owner may maintain trespass, case, or assumpsit. 1 Ch. Pl. 171. The plaintiff here had the right to elect, which of the three actions he would bring. The motion for a nonsuit is therefore refused. The grounds for a new trial are disposed of by the remarks already made, or are *101 matters for the consideration of the jury; and their verdict is not such an one as this Court will disturb. The motion for a new trial is also refused.
Johnson J. concurred.
Harper J. dissented.