## Case No. 12,761.

SHERIDAN v. FURBUR et al.

[1 Blatchf. & H. 423.] [1]

District Court, S. D. New York. Feb. 4, 1834.

SEAMEN — SHIP'S CARPENTER — DISOBEDIENCE — DAMAGES FOR FLOGGING—MOTIVES— ORDERS FROM SUPERIOR.

1. A ship's carpenter ranks with an ordinary seaman, and cannot disobey the orders of the second mate.

2. General orders from one officer will not excuse the disobedience of a seaman to the specific orders of another officer.

3. Where a carpenter disobeyed the orders of the second mate, on an occasion of no pressing emergency, under the erroneous impression that he was warranted in so doing, and the master had him flogged, without hearing the excuse which he offered: *held*, that the master was liable in damages.

4. In measuring the amount of such damages, the court will regard the motives of the libellant in instituting the suit.

5. In an action against a mate for an assault and battery, it is a sufficient justification, that he acted under the orders of the master, not knowing them to be illegal.

This was a libel in personam, by [Francis Sheridan] the carpenter against [Edward S. Furbur and another] the master and first mate of a vessel, for an assault and battery upon the high seas. The libellant had been ordered by the first mate, several days before the assault complained of, to open a port-hole, which job was still unfinished, when the second mate, at the time the only officer on deck, ordered the libellant to assist in washing down the deck of the vessel. This the libellant refused to do; whereupon he was reported to the master. Although he asked to be heard, the master declined to hear his excuse, which was, that he was at the time under the orders of the first mate, and also, that being of equal rank with the second mate, he was not bound to obey his orders. He was seized up to the rigging, under the orders of the master, by the first and second mates, and a dozen blows were inflicted on him by the second mate, with a nine-thread rattling. This transaction took place near the commencement of a voyage to the East Indies. Other assaults were charged in the libel, but were not sustained by the proofs. It seemed that the libellant had not been heard to complain of the treatment he received on board of the vessel, and had said, since the filing of the libel, that he was sorry he had instituted the suit, but he had been put up to doing so.

Edwin Burr and Erastus C. Benedict, for libellant.

Gerardus Clark, for respondents.

BETTS, District Judge (after stating the pleadings and proofs). In our service and in the English, the carpenter stands upon the footing of an ordinary seaman. He signs the articles, is bound to do, at times, the duty of

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland. Esq.]

a mariner, and has a lien in admiralty for his wages, because of his character as a mariner. The Lord Hobart, 2 Dod. 104. The French ordinance of marine prescribes minute regulations in respect to the qualification and employment of the ship's carpenter; but he is not, in that service, regarded in any other light than an ordinary mariner. 1 Valin, Comm. (Ed. 1776) 589. The cook and steward are equally hired for particular services, yet they are placed on the footing of mariners (Black v. The Louisiana [Case No. 1,461]) and are liable to do duty as seamen whenever, in the opinion of the master, their services are so required. But it is, undoubtedly, the fair understanding of the contracting parties, that ordinarily the duties of the individual shall be confined to the services for which he specifically shipped. He is only to be employed out of the line of his engagement, upon emergencies which require his assistance in relief or aid of the ship's company. In consonance with these general principles, this court has decided, that a mariner, shipped as cook, cannot be put statedly to the duty of a caulker, without being also entitled to the increased wages of that position. The Exchange [Id. 4,594]. There is, however, no foundation for the assumption that the libellant was not bound to obey the orders of the second mate because of his equality of rank with that officer. There was no common rank between them, nor had the libellant any right of command on board, nor did he possess any exemption from the authority of the second mate when in command of the vessel, unless such exemption was secured him by the terms of his contract. In the discharge of his duties when the sole officer on ship-board, the second mate executes the power of the master, and is entitled to the same obedience from the seamen. In the present instance, the second mate was the sole officer in charge of the deck at the time, and his orders, in fulfilling his charge, were accordingly of the same authority with those of the master, for the time being. Whether or not the duty required on ship-board is demanded by the exigencies of the vessel, must be decided, in the first place, by the officer in command, and it is the duty of the crew to submit to his decision. It would be perilous to the ship and her company to permit a disobedience on their part, at sea, to a lawful command. They have always their redress in a home port, against any oppressive or unnecessary exercise of authority over them. Though carpenters, riggers, cooks or stewards ship as such, and their ordinary employment on board be in the line of their business, still it must be discretionary with the master whether or not they shall perform other occasional duties to which they are competent, in common with the ship's crew. There can be no impropriety in imposing on them a share of labor calculated to promote the health and comfort of the ship's company, and which

they are competent to perform, even if it is not connected with the navigation of the vessel, or called for by any manifest exigency at the time; as, when a vessel needs to be ventilated, fumigated or cleansed at sea, the court is not aware of any unfitness in requiring the carpenter, steward, rigger, &c., to assist in the service. When the state of the weather will permit, it is a wholesome usage, in the merchant service, to wash the vessel's decks daily. The libellant, on this occasion, was called upon to aid in this proper business. It can be as well performed by one laborer as another, there being nothing about it especially connected with the skill or experience of a seaman. If the carpenter is exempt from such duty, it must be by force of positive agreement or indisputable usage. Neither is shown in the case, and I shall hold that the order from the second mate to the libellant was a lawful one, and that he was bound to obey it. Neither is there any foundation for the claim, that the libellant was at the time employed under the directions of the first mate, and could not be detached from that duty by the order of the second mate. He had been put to a job of work some time previously, without injunctions to complete it within any specific time; and the first mate testifies that he had given him no order on the day in question. Every general order is of course subject to the changes required by the exigencies of the service as they occur. As well might the helmsman refuse to obey the mate's orders to vary his course, because he had received from the master general directions as to the course the ship was to keep. The conduct of the libellant, in refusing obedience to the second mate, was accordingly unjustifiable, and the question now arises, whether the respondents employed proper means of correction for his misbehavior.

This court has, on various occasions, declared its acquiescence in the general doctrine, that the master of a merchant vessel may apply personal chastisement to the crew whilst at sea, to compel the execution of lawful orders, or to restrain a spirit of insubordination, and that the power is not limited to merely suppressing or punishing mutinous acts. A power so little in consonance with our ideas of personal independence, is yielded to shipmasters only in consideration of its imminent necessity. 3 Kent, Comm. 181. Its employment at this day is to be justified, not so much by precedents recorded in the jurisprudence of past ages, though even there it will be found that the maritime codes exacted extreme forbearance and moderation on the part of masters in exercising the power (Abb. Shipp. (Ed. 1829), 136, 137; Butler v. McLellan [Case No. 2,242]), as upon the principle that the emergency of the service demands of seamen implicit obedience, and that no other means have been found adequate to ensure it promptly and efficiently. Although a sounder phi-

losophy and a more enlightened experience may lead us to doubt the solidity of the principle upon which the authority rests, it does not belong to courts of justice to declare a new law on the subject. Their province is to administer the law as it is delivered to them. The experiment is in progress, how far this mode of punishment may be safely dispensed with in the army and navy, and, when congress becomes satisfied of the efficacy of more humane substitutes in those branches of public service, we may hope this may then be abolished in our mercantile navigation also. The solicitude of courts of justice to render the exercise of this power as little injurious as possible, is manifested in the restrictions imposed on masters of vessels with reference to it, and in the prompt satisfaction administered in every case of its vindictive or unnecessary use. Abb. Shipp. 136; Watson v. Christie, 2 Bos. & P. 224; Butler v. McLellan, before cited; 3 Kent, Comm. 181, 182. A great variety of cases have been presented to the consideration of admiralty courts and courts of law in the United States, in all of which the general authority of the master to apply personal chastisement in correcting offences against the police and discipline of the vessel, or in coercing prompt obedience to orders, has been recognised; but, at all times, he is admonished to use great caution and consideration, and not to allow his punishment to be disproportionate to the offence, and is reminded that he will be treated as a trespasser whenever the bounds of reasonable moderation are passed, or any unnecessary or intemperate use is made of his power. Rice v. The Polly & Kitty [Case No. 11,754]; Thorne v. White [Id. 13,989]; Brown v. Howard, 14 Johns. 119; Sampson v. Smith, 15 Mass. 365. There seems to be no wavering in the doctrines of the numerous cases upon this subject, and, applying them, with liberal indulgence, to the acts of the master in this instance, it does not appear to me that he has made out a reasonable justification for his conduct. The disobedience of the libellant was not in a spirit of insubordination, but was based upon a claim to rightful exemption from the particular service exacted of him. He was entitled to be heard upon that subject, and to have his objections disposed of on the provisions of the shipping articles, or by the express decision of the master. The emergency of the occasion did not demand an instant execution of the order, right or wrong, and it was accordingly every way fitting that the claim should be calmly considered and temperately determined.

The authority of a master at sea is represented by the law as corresponding to that of a parent over his child, or that of a master over his apprentice. But this is by way of description, and to mark the moderation and feeling of kindness with which the authority should be exercised, and not to meas-

ure its extent; because its exercise is not left so largely to the discretion of a shipmaster, even supposing that a father would be excused for inflicting a blow upon his child for every act displeasing to him, or a master be suffered to visit with a disgraceful flogging every trivial deviation from duty on the part of his apprentice. But, with regard to a ship-master, the persons over whom his authority is to be exerted are entitled to the privileges and immunities of citizens in all respects other than in their qualified subjection to the discipline on ship-board; and every provision of law which sanctions the deprivation of their rights as freemen, evinces, at the same time, a jealous solicitude in their behalf, by imposing on the master a heavy responsibility in the employment of his power. The experience of this court by no means sanctions the epithets often applied to sailors as a class. There is more of metaphor and fancy than of just discrimination in imputing to their dispositions and tempers the wildness and impetuosity of the elements on which they are employed, controllable only by an unremitted exhibition of menace or of physical force. I am satisfied that this is an unwarranted estimate of the character of American seamen. It is undoubtedly necessary that their whole exertions should be at the instant command of their officers, and that they should not be allowed to interpose their own inclinations or judgments to intercept or delay an order given them, and considered necessary by the officer giving it. But I am persuaded it would strengthen and not diminish the discipline and efficiency of crews, to impress on them the conviction, that if they would be tractable and attentive on their part, reliance would be placed on their experience and disposition to do their duty, and no resort would be had to compulsory and harsh means for overawing them or compelling their services. Judicious conduct of masters in their treatment of crews would better command confidence and fidelity than ropes-ends and hand-cuffs. Reasonable kindness, mingled with firmness, with mariners at sea, no less than with troops on land, would, no doubt, stimulate their endeavors far better than the dread of bodily sufferings or scurrilous or boisterous reproaches and oaths. Though seamen, as a class, are heedless and improvident, they go into their employment as a business for life, and many of them, of the younger classes, are in possession of no inconsiderable intelligence. They look forward to advancement by means of their good conduct and capacity; and I am persuaded it can rarely happen, in an American vessel full manned with our own seamen, that a master cannot obtain officers, from the men before the mast, competent to navigate the ship. In the numerous cases brought into this court on claims for wages and for damages for personal torts, I have generally found seamen

prompt to do justice to their officers, however rigid in discipline and urgent in carrying forward the work on board, when fairly treated themselves by the officers. Insubordination and disorders among the crew are too generally found to have had their origin in the unfitness of sub-officers for their places, and in their passionate, reckless and wrongful bearing towards the men. The crew have a common concern in requiring every man to perform his share of service. Vessels avoid taking supernumerary hands. The work neglected by one will fall upon his shipmates, and they will, out of selfishness, if from no higher motive, discountenance idleness or disorder in any of their companions, and be no less solicitous than the officers, that every man shall stand to his post and do his duty. These observations fairly apply to the average conduct of seamen. There are exceptions, to which the attention of this court is too frequently called; but it is not within the experience of this court that just cause of complaint often exists against native seamen, or in respect to mixed crews, without a very painful degree of blame being discovered in the conduct of the officers, tending to produce the difficulty. I am satisfied it is time the experiment should be made, under resolute and temperate masters, to enforce fidelity and police on board of merchant vessels, without the use of the lash or other bodily correction, and thus to elevate the character and ambition of seamen, and render them deserving the great trusts constantly confided to their hands. I can entertain no doubt of its practical good effects, and this court will lend an active agency in aid of the reform, by withholding pay from or awarding damages against seamen for misconduct, according to its powers and the justice of the case.

The discipline in this case was unnecessarily abrupt and severe. There was no occasion for rigorous or prompt proceedings, and the master was bound to have at least inquired into the causes of complaint, if not to have given the orders himself, in the first instance, directly to the libellant. Instead of doing either, he fell upon him, and had the punishment inflicted instantly, without making any effort to persuade him to his duty, and without allowing him to offer an excuse or apology. Indeed, he was peremptorily forbidden to speak. I should be disposed to visit such intemperate conduct with a punishment in damages corresponding to the wantonness of the wrong, were it not that the declarations of the libellant, since the voyage ended, very clearly import that he did not bring the action to vindicate his rights and redress the injury he received, but to satisfy the malevolence or hostile feelings of some one else against the master and mate. This fact takes away all the libellant's claim to damages, beyond a remuneration for his actual injury; and, as he does not himself regard the indignity of a disgraceful punishment, the court will not make it a ground for exemplary compensation. The law gives him some damages, because he has sustained a wrong not fully justified. But, under the circumstances of the case, the court might properly limit the decree to nominal damages, were it not that it seems fit and important to enforce upon masters of vessels the necessity of being always able to show a reasonable occasion for the application of personal chastisement to seamen, and to make it clear that they were unable at the time to vindicate their authority over the ship by milder means. The French ordinance of marine required the master to assemble his officers and receive their deliberate assent before he inflicted chastisement on his sailors. The Code Napoleon has given no sanction to such a punishment. The rule of the English admiralty is, that the master must look well to see that he has the means of justifying himself before the courts of his country, when called to account for correcting a seaman. And our law, without pointing out any specific mode by which the master is to proceed, cautions him that he must conduct himself with calmness and prudence when he assumes to exercise the prerogative of personal chastisement or imprisonment. Upon consideration of all the particulars, I shall decree against the master the sum of $25, with costs.

The case of the mate stands upon a different footing. There is no evidence against him other than that he assisted in bringing the libellant aft and tying him to the rigging to be punished. All this was done under the express orders of the master. Those orders he was bound to obey. There was nothing immoral, or, so far as the mate was authorized to decide, illegal in those orders. He would, accordingly, have been guilty of a breach of duty had he refused to execute them. It belongs to the master to determine what punishment shall be inflicted for offenses on board. He having decided that the libellant was guilty of disobedience, and having ordered him to be flogged for that, the mate and crew were bound to carry his orders into execution; and, though the master acted without legal justification, his authority is a sufficient protection to them. This would not be so, if they had known he was acting illegally, or if he had punished with weapons or in a way to endanger life or limb. Then it would have been their duty to refuse to aid him, and, under extreme circumstances, they would have been justified in even interfering to protect the seaman against the violence and wrong of the master. So, also, if the mate had been himself designedly the cause of the punishment which he inflicted, by urging or advising it, he might be held to have been a co-trespasser with the master. There is no evidence of the kind against this respondent. He only acted in aid of the master, and in pursuance of his direct commands. This was well known to the libellant. The libel must accordingly be dismissed as to

him. I shall also give him costs, because the libellant, by his own declarations, shows that he had no ground of complaint against him. Decree accordingly.

In Richard H. Dana's Seaman's Friend (page 154) it is said: "The carpenter must. when all hands are called, or, if ordered by the master, pull and haul about decks, and go aloft in the work usual on such occasions, as reefing and furling. But the inferior duties of the crew, as sweeping decks, slushing, tarring. &c., would not be put upon him, nor would he be required to do any strictly seaman's work, except taking a helm in case of necessity, or such work as all hands join in. The carpenter is not an officer, has no command, and cannot give an order even to the smallest boy, yet he is a privileged person. He lives in the steerage with the steward, &c., and, in all things connected with his trade, is under the sole direction of the master. The chief mate has no authority over him, in his trade, unless it be in case of the master's absence or disability. In all things pertaining to the working of the vessel, however, and, as far as he acts in the capacity of a seaman, he must obey the orders of the officers as implicitly as any of the crew would, though perhaps an order from the second mate would come somewhat in the form of a request. Yet there is no doubt that he must obey the second mate, in his proper place, as much as he would the master in his."

SHERIDAN (HOLMES v.). See Case No. 6,-644.

SHERIDAN (WHALEN v.). See Case No. 17,476.

SHERIFF (DALY v.). See Case No. 3,553.

SHERIFF OF CHARLESTON (UNITED STATES v.). See Case No. 16,276.

SHERLOCK (UNITED STATES v.). See Case No. 16.277.