ALEXANDER McANDREW and another, Respondents, *v.* JOHN RADWAY, Jr., Appellant.

Every intendment is to be in favor of the performance of duty by a notary, who certifies to the protest of negotiable paper for non-payment.

The certificate should be read in harmony with the performance of official duty, unless the contrary construction is clearly indicated.

*Charles M. Black,* for the appellant.

*James L. Campbell,* for the respondent.

DAVIES, Ch. J. This action is brought against the defendant, to charge him as indorser of a foreign bill of exchange. The bill was protested in England, on the 17th of June, 1858, for non-acceptance, and notice given to the defendant, who resided in New York, on the 7th or 8th of July, 1858. The bill arrived, with the protest, on the 6th of July, and on the next day notice was given of its dishonor to the defendant. The plaintiffs had been informed, by letters received by them on the first day of July, that the bill was refused acceptance, and was about being protested. By the succeeding steamer the plaintiffs received the protest from the notary, and, it is to be presumed, the notice of protest, and the next day gave the defendant notice of its dishonor, and exhibited to him the protested bill and protest. Verdict and judgment for plaintiffs, and same affirmed at General Term.

I see no error in the charge, or the refusals to charge, of the learned judge at the circuit.

The first request to charge was based upon a criticism of the certificate of the notary, that it did not appear from the certificate that he personally demanded acceptance of the bill. As I read the certificate, the notary himself demanded the acceptance of the bill. Wherefore, he says, I, the said notary, have protested, &c. The demand of acceptance is stated as the personal act of the notary. It might well be that he caused due and customary present-

ment to be made of the bill. This is the universal usage
among notaries, to employ an agent or clerk to present a bill
for acceptance. It is not necessary for the notary to procure
the acceptance. Any person not a notary may do this. It
is in no sense an official act. But if it is not accepted, then
it is necessary, as a part of the proceeding to legally protest,
that the officer making the protest should himself person-
ally demand the acceptance, and then, and then only, is he
authorized to protest the bill. All this may be inferred
from the language used in the certificate.

There does not seem to be anything important in any of
the other exceptions taken by the defendant, or calling for
especial notice. All the questions which arose at the trial
seem to have been properly disposed of by the learned jus-
tice at the circuit, and the judgment should be affirmed,
with costs.

Leonard, J. The question of chief importance in this
case relates to the protest of a bill of exchange for non-
acceptance, drawn by Sanders and indorsed by the defendant,
upon a person residing in the interior of England.

The notary certifies that he caused due and customary
presentment to be made of the original bill, a true copy of
which is attached, unto the person upon whom it is drawn,
and demanded acceptance thereof.

Of course the notary must certify only the truth, and that
only of which he has personal knowledge. He cannot law-
fully certify the performance of an act, within the scope of
his duty, where it has been performed by a deputy. (*Hunt* v.
*Maybee*, 7 N. Y., 269.) If it appears, from the face of the
notarial certificate, that the notary has not personally per-
formed the acts to which he has certified, it is not evidence
of their performance. (*The Onondaga County Bank* v. *Bates*,
3 Hill, 53; see, also, the note to that case, p. 57, ed. 1859.)
As public officers, notaries are entitled to the presumption
of law in their favor, that they have performed their duty,
unless the contrary appears. The notary appears, by his
certificate, to have made a personal demand of acceptance.

The presentment for acceptance may also have been personal. The certificate must be read in harmony with the performance of official duty, unless the contrary construction is clearly indicated. It is customary, in practice, to leave bills for acceptance for a few hours, sometimes for a day, where the person upon whom they are drawn is absent from his place of business, or in case he requests it for the purpose of deliberation or to examine the account of the drawer. (Story on Bills, § 350.) The notary may have found the drawee absent in this case, and have left the bill, and afterward made a personal demand of acceptance. The presentment in such a case would have been due and customary, but not made personally to the drawee in the first instance.

Every intendment is to be in favor of the fair performance of his duty by the notary. It does not appear from the certificate, necessarily, that the notary did not personally do the acts to which he has certified. There is no other evidence that he did not. The certificate, although open to criticism, is sufficient.

An objection was also taken to the want of diligence in notifying the defendant of the non-acceptance of the bill. The judge charged that knowledge of the protest might not have come to the plaintiffs till the 6th of July, and in that event, if notice of non-acceptance was given on the 7th of July, it was in time; that the notice received by the plaintiffs on the 1st of July might have been a notice of non-acceptance before the actual protest was made. If that were so, and the plaintiffs afterward received the protest in due course, the notice, if given on the 7th to the defendant, was sufficiently early. The defendant's counsel excepted to this proposition, and now insists that the evidence did not warrant the use of such language. The objection was general at the trial, and the attention of the judge was not called to any inconsistency as to the facts.

The proposition of the judge, however, appears to be correct, and the language in harmony with the evidence. The testimony is, that the plaintiffs' correspondent in Lon-

don, to whom they sent the bill, wrote them on the 18th of June, which letter was sent to plaintiffs by steamer on that day, and reached them at New York July 1st. The plaintiffs produced the letter and offered it in evidence, but on the defendant's objection it was excluded. One of the plaintiffs being on the stand as a witness, stated that he had heard by this letter that the drawee had refused to accept, and they were having the bill protested. This is clearly not a statement that it had been protested. Probably the person to whom the bill had been sent from London for collection had been refused acceptance, and had so informed the London house on the day it was delivered to the notary, perhaps by telegraph. The bill was protested on the 17th of June, as it appears by the notarial certificate; and, as the residence of the drawee was seventy miles from London, it is not probable that sufficient time had elapsed for it to be returned, or for notice of protest to be sent to the London house in season to be mailed to New York by the steamer of the 18th of June. The universal custom in England and America is to send only by mail. (Story on Bills, § 287.) It was in due season to send the notice to the London house on the 18th, the day after it was dishonored. (Id., § 288.)

So far as the defendant has admitted the contents of the letter of June 18th to be given in evidence, it appears that the plaintiffs had nothing before them from the letter upon which they were authorized to take action, in the way of, giving notice of protest to the drawer or indorsers of the bill. The protested bill and notices were forwarded from London by the next steamer, which reached New York so that the plaintiffs received them July 6th. They had till the next day to notify the drawer and indorsers. The jury have found that the notice was so given. The evidence is, that the bill and certificate of protest were shown to the defendant about the 7th or 10th of July. An account in writing of the bill, protest and damages was presented by the witness two or three days after that. The amount is shown, dated July 7th. Surely the judge was justified in the language and in the inquiry submitted to the jury.

Another objection is presented on the defendant's points, that there was evidence that the plaintiffs had given time to the drawer without the consent of the defendant, who is an accommodation indorser, and that he is thereby discharged. This question was submitted to the jury in the manner requested by the defendant, and there is no exception in respect to it. The evidence of such an agreement was wholly insufficient, but the defendant had the benefit of having it submitted as if the evidence was sufficient for the jury to find in his favor. There is no exception here, and nothing to be reviewed.

The judgment should be affirmed, with costs.

All the judges concurring,

Judgment affirmed.