HELBURN-THOMPSON COMPANY, Plaintiff, *v.* ALL AMERICAS MERCANTILE CORPORATION, Appellant.

THE NATIONAL PARK BANK OF NEW YORK, Respondent.

First Department, November 23, 1917.

Bill of lading — title to property of purchaser of time draft with bill of lading attached — lien — pledge — loss of lien on goods by surrender of bills of lading to purchaser — implied trust — equitable lien.

In the absence of special agreement, the purchaser of a time draft with bill of lading attached acquires title to the property described in said bill, conditional upon the acceptance of the draft by the drawee, not upon the ultimate payment of such draft.

Where a bank, having purchased and discounted time drafts with bills of lading and certificates of insurance attached, transmitted the papers to its foreign agent who procured the acceptance of the drafts by the purchaser and thereupon delivered to them the bills of lading and accompanying documents, and thereafter both the purchaser and the vendor failed, and the goods were returned to the vendor and are now in the possession of its receiver, the bank upon surrendering the bills of lading to the purchaser lost all interest in and lien upon the goods, and hence is not entitled to the possession thereof.

The bank could have protected itself by having the acceptance made conditional upon payment of the drafts, but not having done so, it must be presumed to have released, absolutely, its lien upon the goods after the acceptance of the drafts, and, therefore, cannot claim a trust in its favor.

A surrender by a pledgee of a pledge, even though upon a promise that the indebtedness will be paid from the sale of the pledge, is a surrender of the pledgee's lien.

Where the legal lien of a pledgee has been divested by surrender of the goods pledged, an equitable lien does not obtain in the absence of some specific agreement therefor.

SCOTT, J., and CLARKE, P. J., dissented, with opinion.

APPEAL by the defendant, All Americas Mercantile Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of August, 1917, directing defendant's receiver to hold certain leather in his possession subject to the lien of The National Park Bank, the petitioner herein.

*Philip Goldfarb*, for the appellant.

*Louis F. Doyle*, for the respondent.

SMITH, J.:

It appears that defendant sold to a firm in Buenos Aires three cases of leather. The National Park Bank bought and discounted two drafts at ninety days after sight for the amount of the sale, drawn on the Buenos Aires firm, to which drafts were attached bills of lading and certificates of marine and war risk insurance. The bank transmitted the papers to its Buenos Aires agent, who procured the acceptance of said drafts by said firm, and thereupon delivered to them the bills of lading and accompanying documents. Thereafter both said firm and the defendant failed. The firm was owing the defendant large amounts of money and, among other

things, sent back to the defendant these three cases of leather, which are now in the possession of the receiver of the defendant. The bank has made a motion to obtain possession of these goods, claiming a lien thereon for the payment of the two drafts, and this claim has been upheld by the court at Special Term.

These two drafts, so far as appears, were in the ordinary form with the usual bills of lading and insurance certificates attached. When the drafts were purchased by the bank and duly indorsed by the defendant the bank acquired a special property in and lien upon the goods covered by the bills of lading as security for the acceptance by the drawees of the purchased drafts. It is well established that in the absence of special agreement the purchaser of a time draft with bill of lading attached acquires title to the property described in the bill of lading conditional upon the acceptance of the draft by the drawee, not upon the ultimate payment of such draft. (See *Marine Bank of Chicago* v. *Wright,* 48 N. Y. 1; *National Bank* v. *Merchants' Bank,* 91 U. S. 92; 35 Cyc. 334.) Upon the acceptance of these drafts the bills of lading were turned over to the firm, as must have been contemplated, for otherwise the firm could not have obtained the goods from the carrier. After the acceptance by the Buenos Aires firm, therefore, the sole object of the pledge was accomplished, and upon the surrender of the bills of lading to this firm the bank lost all interest in the specific goods pledged, and thereafter must be deemed to have been content to hold instead of a lien on specific goods, merely the personal liability of the acceptors for a liquidated amount as represented by the drafts.

Such being the situation at the time of the acceptance of the drafts by, and the delivery of the bills of lading to these vendees of the goods in question, it is not apparent how the bank could ever subsequently acquire a special property in these specific goods, whatever disposition the vendees might choose to make of them. A surrender by the pledgee of a pledge, even though upon a promise that the indebtedness will be paid from the sale of the pledge, is a surrender of the pledgee's lien. (*Black* v. *Bogert,* 65 N. Y. 601; *Hickok* v. *Cowperthwait,* 137 App. Div. 94.) After the surrender by the bank of any lien that it might otherwise have had, by the surrender of the bills of lading, it cannot matter how these

specific goods afterwards came back into the possession of the defendant, the original vendor and the drawer of the draft. The legal effect of the transaction with and by the bank, in the absence of any special arrangement shown, negatives absolutely the existence of any facts sufficient to establish an implied trust that these goods or the proceeds from the sale of these goods should be used solely to pay these drafts. Such a trust as claimed could arise only from an express or implied agreement between the bank and the acceptors as to the ultimate disposition of the goods or the proceeds thereof. The law, however, as stated, establishes, at least presumptively, the contractual relations between these parties. The bank could have protected itself by having the acceptance made conditional upon payment of the drafts, but not having done so it must be presumed to have released absolutely its lien upon these goods after the acceptance of the drafts, and, accordingly, cannot now reasonably claim a trust in its favor.

Nor do the authorities cited in the dissenting opinion establish any different rule. The dissenting opinion quotes a sentence from section 22 of Jones on Liens (2d ed.), to the effect that as between the immediate parties a change of possession may not defeat the lien. The question there considered was whether the lienor had delivered property to the owner under circumstances indicating his intention to surrender his lien. The point of the rule is stated in the last sentence in the section: " Thus, where the owners of a sawmill permitted boards, sawed by them at a stipulated price, to be removed from their mill-yard to the bank of a canal at the distance of half a mile from the mill, it was held that they lost their lien in respect to third persons, though not against the owner of the boards, it being expressly stipulated between the parties that the lien should continue notwithstanding the removal." It is very clear that a surrender under such a stipulation would not divest the lien as against the owner.

In the case of *Flour City Nat. Bank* v. *Garfield* (30 Hun, 579), referred to in the dissenting opinion, a draft was drawn upon some consignees of goods, which draft was discounted by the plaintiff bank *upon the specific agreement that the draft was to be accepted and paid by the consignees from the proceeds of the*

*sale.* It was there held as against the assignee of the consignor, who obtained possession of the wheat before its delivery to the consignees, that the bank had a lien upon the wheat to secure the draft discounted upon the faith thereof. There was no such agreement in the case at bar. The draft discounted was payable in ninety days, without any agreement whatsoever that the proceeds of the sale of the leather should be applied to the payment of the draft.

In the case of *Means* v. *Bank of Randall* (146 U. S. 620, 627, 628), also referred to in the dissenting opinion, there was a specific agreement " that a draft for the amount advanced should be drawn by Lyons against the shipment on the defendants, to be accepted by them *and paid out of the proceeds of the sale of the cattle.*"

No case is cited, and I have been able to find none, in which where the legal lien of a pledgee has been divested by a surrender of the goods pledged, an equitable lien was held to obtain, unless under some specific agreement therefor, of which there is no pretense in the case at bar.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

DOWLING and PAGE, JJ., concurred; CLARKE, P. J., and SCOTT, J., dissented.

SCOTT, J. (dissenting):

In my opinion the order appealed from worked substantial justice between the parties and should be affirmed, unless there be controlling reasons to the contrary. The result of the transaction as it has turned out is that the defendant, the seller of the leather, has received payment for its merchandise, and has also received back the merchandise itself, leaving the bank, which furnished the funds to pay for the merchandise, out of pocket with no hope for reimbursement except in so far as it can recover from two insolvent debtors.

I agree entirely with my brother SMITH that when the bank surrendered the bills of lading to the consignee at Buenos Aires it surrendered its specific lien upon the leather, and if the consignee and acceptor of the drafts had sold the leather in due course of trade to a *bona fide* purchaser, the bank

would have had no claim either upon the leather or the purchaser but would have been remitted to its remedies against the acceptor and drawer of the drafts. The very purpose of surrendering the bills of lading to the acceptor when he accepted the drafts, was to enable him to sell the merchandise, and thus, if necessary, put himself in funds to pay the drafts at maturity. But the acceptor never did sell the merchandise, but reshipped it to the consignor, the drawer of the draft, for no new consideration.

This circumstance creates a situation which is not precisely duplicated in any reported case which I have been able to find. It is necessary, therefore, to reason somewhat from analogy with cases not identical. What the bank claims is that, notwithstanding its delivery of the bills of lading to the acceptor, while it surrendered its legal lien and right of possession, it retained an equitable lien, as against the acceptor of the drafts and the makers. As is said in Jones on Liens (2d ed. § 22): "As between the immediate parties a change of possession may not defeat the lien. It is only between the claimant and third persons that continued possession is essential." Of course such a lien may be utterly defeated by a *bona fide* sale of the property, but that is not the question here presented.

When the drafts were discounted or purchased by the bank, the bills of lading were attached to them, and they were so attached when the drafts were presented to the drawee and were accepted. This fact indicated in the clearest possible way both to the bank and to the acceptor that the drafts had been discounted upon the faith of the shipment, and that it was upon the merchandise that the bank relied.

A very similar case in principle is *Flour City Nat. Bank* v. *Garfield* (30 Hun, 579). In that case a merchant shipped a cargo of wheat to commission merchants in New York, and the next day drew a draft upon the consignees and procured it to be discounted at a bank upon the representation that the cargo had been shipped to the drawees (as it had) and with an understanding between the drawer and the bank that the draft was drawn against the proceeds of the shipment. The shipping documents were not delivered to the bank, but were sent direct to the consignees, with a letter stating that the shipper

had drawn a draft and asking its payment. The next day the shipper, being insolvent, made an assignment for the benefit of his creditors, and the assignee stopped the goods in transit. The drawees of the draft refused to accept or pay it, and the bank claimed to be entitled to possession of the merchandise, although no title either actual or constructive had been acquired by it, but upon the ground that it had an equitable lien. The court so held upon the ground that the circumstances showed that the draft had been discounted upon the credit of the shipment. Surely the fact that the shipping documents are attached to a draft when discounted and when presented for acceptance is equally clear evidence that the discount is effected upon the credit of the shipment. In the course of its opinion the court uses the following language (p. 585): " There is an almost unbroken line of judicial expression to the effect that upon a state of facts such as are found by the referee, the purchaser of the draft has an equitable lien upon the property against which the draft is drawn, as a security for the payment of the money advanced, and the same can be enforced in a court of equity, whether the drawee accept the draft or not, and the same attaches from the time of discounting, and continues after the goods reach the consignee, and, if the draft is not paid before, the lien adheres to the funds. derived from the sale of the property."

The principle upon which the bank claims the merchandise in this case is succinctly stated by the Supreme Court of the United States in *Means* v. *Bank of Randall* (146 U. S. 620, 627, 628) as follows: " A bank which makes advances on a bill of lading has a lien to the extent of the advances, on the property in the hands of the consignee, and can recover from him the proceeds of the property consigned, even though the consignor be indebted to the consignee on general account; and the consignee cannot appropriate the property or its proceeds to his own use in payment of a prior debt." And it is equally clear that he should not be permitted, by returning it to the consignor, to appropriate it to the payment of a prior debt due from him to the consignor.

My conclusion is that the bank clearly discounted the drafts on the credit of the bills of lading; that by surrendering the bills of lading to the consignee on the acceptance of the drafts

it surrendered its specific legal lien on the goods, but retained an equitable lien, subject to be defeated by the actual sale of the goods; that since no such sale took place this equitable lien still persisted after the return of the goods to the consignor and that the bank is still entitled to enforce it.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.