MARTHA E. HUNTER, Plaintiff, *v.* JOHN BARTON PAYNE, Director General of Railroads as the Agent Provided for in Section 206 of the Transportation Act, 1920, Defendant.

(Supreme Court, Oswego Trial Term, November, 1920.)

Carriers — stoppage in transitu — bailments — when delivery to carrier is delivery to purchaser — when agent cannot be held liable for failure to obey instructions.

The right of stoppage *in transitu* arises solely when an unpaid seller has shipped goods to an insolvent buyer. (P. 388.)

The pledgee of goods permitted the real owner to take and sell them in its own name, on its promise to pay over to the pledgee, to apply on a past due debt the check or money received, with no special notice to or agreement with the purchaser, and to deliver the goods to a carrier and take a bill of lading in its own name as consignor. *Held,* that the pledgee, in the absence of any fraud inducing her to part with possession of the property, had lost the right to demand that possession thereof be restored to her by the purchaser. (Pp. 389, 390.)

After the goods had been shipped the consignee advised the consignor, who at the time of the shipment was on the verge of bankruptcy, that it would not send a check but would credit the shipment on a past due indebtedness of the consignor, whose president, acting for the pledgee, gave notice to the carrier to stop the shipment. The shipment was not stopped and the consignor received no check or money in payment of the goods. In an action by the pledgee against the carrier for its alleged negligence in failing to stop the shipment and return the goods to her, the jury, upon the special question of facts submitted, subject to the opinion of the court, found that the defendant's agent, whose efforts to stop the shipment were not in conformity with the instructions given by plaintiff's agent, and the defendant were both negligent in their acts in that respect. (P. 387.) Upon granting a nonsuit, on motion reserved, *held,* that the delivery of the goods to defendant constituted a delivery thereof to the purchaser, subject to the right of stoppage *in transitu,* but there being no claim or evidence that

25

the consignee was insolvent, the plaintiff had lost her right to demand that the consignee restore possession of the goods to her.   (P. 390.)

The fact that defendant's agent took an indemnity agreement from the consignor, the effect of which was that defendant should be deemed the agent of the consignor, to make an attempt to stop the shipment and return it to the consignor, did not change the situation as he would have been unable to do legally what was required of him, and plaintiff suffered no loss even assuming that she was entitled to the benefit of the indemnity agreement.   (Id.)

An agent is not liable for failing to do what the law does not and will not permit him to do, and he cannot he held accountable for failure to obey instructions and perform acts which are illegal.   (P. 391.)

MOTION by defendant for a nonsuit on the trial upon which decision was reserved until counsel could submit briefs.

A. T. Jennings, for plaintiff.

Charles R. Coville, for defendant.

DAVIS, J.   On September 13, 1918, the Viking Corporation of Fulton shipped to the Burd-Ring Sales Company at Chicago, Ill., pursuant to its order, 4,928 spark plugs of the value of $1,478.40.   These were delivered at the freight office of the New York, Ontario and Western Railroad in Fulton, and a bill of lading issued, which was sent with the invoice by the Viking Corporation to the receiving agent of the consignee in Chicago.

The spark plugs, some time prior to their shipment, had been delivered into the possession of the plaintiff and kept by her as a pledge or collateral security for the payment of a note of $2,884.22 made by the Viking Corporation to her as payee on June 1, 1918.

The Viking Corporation, the manufacturer, had

received an order from the Burd-Ring Sales Company, and being unable to fill it from its own stock, made an arrangement with the plaintiff to ship the plugs held by her and turn over to her the price that would be received on the sale thereof to apply on the note. The terms of the sale, as stated by an official of the now defunct Viking Corporation, was to be cash on receipt of the bill of lading attached to the invoice to be paid in the form of the consignee's check to the Viking Corporation. It does not appear that the consignee ever had any notice that the plaintiff had a special property in the shipment.

At the time of the shipment, the Viking Corporation was indebted to the consignee in the sum of $3,000 or thereabouts, which was past due and payable. The consignor was then on the verge of bankruptcy, and after the goods were shipped the consignee on September twentieth advised the Viking Corporation that it would not send a check, but would credit the shipment on the past due indebtedness. Thereupon the president of the Viking Corporation, acting for the plaintiff, gave notice to the defendant, through its agent at Fulton, to stop the shipment, which the agent undertook to do after obtaining a bond of indemnity signed by the consignor. The efforts of the agent were not in conformity with the instructions given him by the agent of the plaintiff, and upon the special question of fact submitted, the jury has found that he and the defendant were negligent in their acts in that respect. This verdict was taken subject to the opinion of the court on questions of law.

The shipment was not stopped, the Viking Corporation received no check or money in payment, and the plaintiff brings this action for the alleged negligence of the defendant as a carrier, in failing to stop the shipment and return the goods to her.

The stenographer's minutes have not been furnished me, and I have made the foregoing statement of facts relying on my own minutes and my memory, together with the exhibits furnished me and the pleadings.

It is apparent that the plaintiff's claim to recover must fail, if she is relying upon the right of a shipper of stoppage *in transitu.* There is no claim or evidence that the consignee was insolvent. The right of stoppage *in transitu* arises solely when an unpaid seller has shipped goods to an insolvent buyer. Pers. Prop. Law, §§ 134, 138; Benj. Sales, § 828; 35 Cyc. 494.

The case upon which plaintiff's counsel strongly relies to establish the liability of the defendant (*Rosenthal* v. *Weir,* 170 N. Y. 148) is a case where the buyers became insolvent and the seller learning of it gave notice to the carrier to stop the shipment, and thereafter, through the negligence of the carrier, the merchandise was delivered to the buyers; and it was held that the plaintiff could recover damages of the carrier to the extent of the value of the goods, by reason of its negligent failure to obey the instructions of the plaintiffs and return the goods. The difference between that case and the one at bar is the vital one — that in the case cited the buyers were insolvent, and the right of stoppage *in transitu* had arisen, while in the case here, the buyer was solvent, and that right had not arisen.

Plaintiff's counsel urges, however, that a property interest in the goods remained in the plaintiff, even after delivery to the carrier, so long as the consignee failed to make payment in cash or by its check; that she had a right to stop or divert the shipment; that when the agent of the defendant at Fulton was given such instruction and was furnished an indemnity bond, such as he required, that the defendant was charged with the absolute duty of returning the goods to her;

and his negligent failure to act according to instructions fixes the defendant's liability.

I cannot follow the reasoning of the learned counsel to this conclusion. Undoubtedly, on a sale without credit, a failure to pay cash contemporaneously with the receipt of goods on the part of the buyer, nullifies the sale and gives to the seller the right to retake or replevy the goods. But if the goods are sold to a buyer who is a creditor of the seller in a larger amount than the purchase price, I can find no authority holding that the rule just stated is then operative. It seems to me, that in such a case, unless there was a special, definite agreement expressly forbidding the buyer to apply the debt to the payment of the goods, the buyer would be entitled to treat the existing debt as equivalent to a cash payment, and could successfully interpose defenses of offset, counterclaim and payment, in an action to recover damages or for replevin.

I conclude, also, that when the plaintiff, holding the goods merely as a pledge, parted with their possession and permitted the Viking Corporation, the real owner, to take and sell them in its own name, on its promise to pay over to her to apply on her debt the check or money it should receive, with no special notice to or agreement with the purchaser; and to deliver them to a carrier and take a bill of lading in its own name as consignor — that she lost her special property in the goods; and that there has been no fraudulent act on the part of any one in inducing her to thus part with the possession of the property so that title may be restored to her. *Black* v. *Bogert*, 65 N. Y. 601; *Helburn-Thompson Co.* v. *All Americas Mercantile Corp.*, 180 App. Div. 167; affd., 223 N. Y. 675; 31 Cyc. 816, 817. See, also, *Thalmann* v. *Capron Knitting Co.*, 100 App. Div. 247; affd., 182 N. Y. 525.

The plaintiff had ample means of protecting her interests. She could have insisted on the property being shipped in her own name. She could have required it to be shipped and consigned to herself or to the Viking Corporation, or with a bill of lading attached to a sight draft, and have thus been in control of it until the purchase price was paid; but having selected the method of delivering over the property in which she had a special interest, to be shipped by its real owner on its promise to turn over the purchase price to her, she relinquished her title and lost the right of demanding from a third person that possession of the property be restored to her.

The delivery to the carrier constituted a delivery to the purchaser, subject to the right of stoppage *in transitu,* and the unpaid seller loses his lien on the goods by such delivery. Pers. Prop. Law, § 137; *Wilcox Silver Plate Co.* v. *Green,* 72 N. Y. 17; *Mee* v. *McNider,* 109 id. 500; *Mora y Ledon* v. *Havemeyer,* 121 id. 179.

The fact that the defendant took an indemnity agreement does not, to my mind, change the situation. Ignoring the fact that the undertaking was taken by the New York, Ontario and Western Railroad Company, and not by the Director General, the effect of the bond was that the carrier should be deemed the agent of the Viking Corporation to make an attempt to stop the shipment and return it to the Viking Corporation. Confessedly, the efforts of the defendant's agent were negligent in his attempt to stop the shipment; but had he proceeded with due diligence (if I have correctly stated the legal principles) he would have been unable to do legally what was required of him, and the plaintiff has thereby suffered no loss, even if we may assume that she is entitled to the benefit of this indemnity agreement made by the Viking

Corporation with the railroad company. An agent is not liable for failing to do what the law does not and will not permit him to do, and he cannot be held accountable for failure to obey instructions and perform acts which are illegal. 31 Cyc. 1455; *Brown* v. *Howard*, 14 Johns. 119.

My conclusion is, therefore, that the motion for a nonsuit must be granted, with costs.

Motion granted, with costs.