Hongkong and Shanghai Banking Corporation, Appellant, *v.* The Lazard-Godchaux Company of America, Inc., Respondent. First Department, November 30, 1923.

**Bills and notes — action to recover balance due on drafts drawn by defendant on third person against collateral and paid by plaintiff — summary judgment granted under Civil Practice Act, § 476, and Rules of Civil Practice, rule 113, on proof by affidavit of allegations of complaint and adoption of resolution by defendant admitting liability — adoption of resolution not denied by defendant — any defect in notice of nonpayment is waived by resolution — delivery of collateral to drawee on acceptance of drafts, and sale of collateral did not release defendant — defense that drafts were accepted payable ninety-three days after sight instead of ninety is not good — when order denying motion for summary judgment appealable.**

Summary judgment should be granted on motion by the plaintiff under section 476 of the Civil Practice Act and rule 113 of the Rules of Civil Practice, in an action to recover the balance on two sight drafts drawn on a third person by the defendant against collateral and paid by the plaintiff, where it appears that the allegations of the complaint are supported by affidavits showing the drawing, presentation and failure to pay the drafts and notice of their dishonor, and showing also the adoption of a resolution by the defendant in which liability for the payment of the drafts was admitted, the adoption of the resolution not being denied by the defendant or in any way explained.

Any defect in the notice of non-payment was waived by the resolution adopted by the defendant admitting liability on the drafts.

The delivery of the collateral, securing the drafts, to the drawee on acceptance did not release defendant from its liability, since the collateral was hypothecated to the plaintiff against payment of the drafts and when the hypothecation is against payment the holder's right to sell collateral persists even after its delivery.

The sale of the collateral by the plaintiff at an alleged inadequate price did not release the defendant, since the plaintiff had the right to sell the collateral after default, and furthermore, there is no allegation of inadequacy of price and in any event inadequacy of price on a resale by the holder of bills of lading must be pleaded as a counterclaim, which was not done in this case.

The defense that the defendant was released because the drafts were accepted, payable ninety-three days after sight instead of ninety days, is not sufficient in law, since the three days were days of grace, the existence of which at the place where the drafts were accepted is proven by affidavits by the plaintiff and not

denied by the defendant, and furthermore, the defendant did not plead any such defense.

An order denying a motion for summary judgment will be reviewed by the Appellate Division where the affidavit shows that the defenses and denials raise no issue.

APPEAL by the plaintiff, Hongkong and Shanghai Banking Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 5th day of February, 1923, denying its motion for summary judgment.

*Whitman, Ottinger & Ransom* [*Nathan Ottinger* of counsel], for the appellant.

*Hovell, McChesney & Clarkson* [*Robert L. Luce* of counsel; *Sidney A. Clarkson* with him on the brief], for the respondent.

McAVOY, J.:

Plaintiff moved for summary judgment under section 476 of the Civil Practice Act and rule 113 of the Rules of Civil Practice, upon the resolution of June 3, 1922, of defendant's board of directors which it is claimed admits that the defendant company, The Lazard-Godchaux Company of America, Inc., became liable as the drawer of two drafts which are the subject of the action. The balance due on the drafts amounts to over $49,000 with interest. Each of the two drafts is the subject-matter of a cause of action contained in the complaint. The drafts are in identical terms and (except for the difference in amounts) read:

" THE LAZARD-GODCHAUX CO. OF AMERICA, INC.

" NEW YORK, *February* 10, 1919.

" $27,348.73                                                    No. 199

"At Ninety days..........sight pay to the Order of Hongkong & Shanghai Banking Corporation Twenty-Seven thousand three hundred forty-eight 73 /100 Dollars.

" Value received and charge the same to account of The Lazard-Godchaux Co. of America, Inc.      " LOUIS LAZARD,
                                                          " *President.*

" To Messrs. JOHN RICHARDS & Co.,
      " 81 Szechuen Road, Shanghai, China."

Each of the drafts was stamped on its face to be paid at the current rate for bank demand drafts at date of payment with interest at six per cent per annum from date to approximate date of returns reaching New York.

On March 19, 1919, John Richards & Co. duly accepted the bill of exchange in the usual form. The bills of exchange were drawn under a letter known as the Shanghai letter which was dated June 4, 1918, which letter informed the defendant that the

plaintiff would purchase as offered the documentary bills drawn at ninety days on John Richards & Co. to the extent of $60,000 for full invoice cost of certain caustic soda to be shipped to the port of Shanghai and which soda was the merchandise for which these bills of exchange were drawn. The letter instructed the defendant as to the documents which should accompany the bills and that they were to be duly hypothecated to the bank against payment of the bills, and the letter contains this language: " Please note that this is not to be considered as being a bank credit and does not relieve you from the liability usually attaching to the drawer of a bill of exchange."

The acceptor, John Richards & Co., on the maturity of the bill and its presentation refused payment and there was due protest of non-payment and notice of dishonor which was cabled here to plaintiff's New York office and a letter sent notifying the defendant of the dishonor of the bill. Credit was given on the amount due under the bills for a part payment, which part payment resulted from the sale of 106 drums of the goods covered by a certain bill of lading, which bill of lading was given to secure the drafts in suit. Upon proof of the allegations of the complaint by offering full and detailed affidavits in connection with the drawing, presentation and failure to pay the drafts and notice of their dishonor, together with proof of the adoption of a resolution by defendant company, in which liability for the payment of the bill of exchange was set out, this motion for summary judgment was made and reliance is had, both upon section 476 of the Civil Practice Act and rule 113 of the Rules of Civil Practice for the relief that it asks.

Section 476 of the Civil Practice Act reads:

" Judgment on pleadings or admission of part of cause. Judgment may be rendered by the court in favor of any party or parties, and against any party or parties, at any stage of an action or appeal, if warranted by the pleadings or the admissions of a party or parties; and a judgment may be rendered by the court as to a part of a cause of action and the action proceed as to the remaining issues, as justice may require."

The resolution upon which the claim is made that the defendant company admitted liability as the drawer of the drafts which are the basis of this action reads as follows:

" *Further Resolved:* That demand be immediately made upon the Bankers Trust Company to perform its guarantee of February 8th, 1919, to hold the Company harmless from the liability, upon the security of, and in reliance upon which guarantee, this Company became liable as the drawer of said drafts which are the subject matter of the action against this Company, first above mentioned,

now pending in the Supreme Court, New York County, brought by the Hongkong & Shanghai Banking Corporation; * * *."

It does not seem possible for a defendant to make a more deliberate admission of its liability, particularly as the guarantor mentioned in the resolution would not in law be liable on its guaranty unless the liability of the defendant upon these drafts was fixed. This resolution is not denied, contradicted or explained by defendant and was adopted long after the amended answer in this action was served, and was made of course with a complete cognizance of the various denials and defenses which the answer contains. It seems to me that this admission is conclusive that there is no defense to this action which the defendant here is willing to submit for adjudication, and that the pretended denials and defenses in the answer which really were interposed by the indemnitor of defendant's guarantor are unfounded. Besides this admission, however, the moving papers show the existence of all the necessary elements for an action upon these bills of exchange or drafts, and with the defendant making no affidavit through any of its officers or agents in opposition contradicting the moving papers, the motion for summary judgment under rule 113 should have been granted.

The drawing of the drafts by the defendant is now admitted, and if not, it is proven. Non-payment is established. Maturity is shown by the date of acceptance on the face of the bills, protest indicated through photographic copies of the British Pro Consul's certificate thereof at Shanghai. Due notice of non-payment and protest is proven by defendant's letter of July 11, 1919, acknowledging receipt from plaintiff's New York branch of letters of July 7 and 9, 1919. Each of these letters describe the drafts, advise non-payment and protest, demand payment and state amount due. Although the notice was received many days after protest, it arrived before a letter mailed from Shanghai could have reached New York, and it was within time in any event. There can be no question of the sufficiency of the notice because on July 10, 1919, after this notice had been received, the defendant cabled to Richards, the acceptor, to pay the draft, less fifteen per cent. The notice was actually received by the party within the time specified under the Law Merchant and section 175 of the Negotiable Instruments Law, and even though not sent in accordance with the requirements of section 179 of the statute it will suffice. Section 179 of the Negotiable Instruments Law prescribes where notice must be sent and provides that "where the notice is actually received by the party within the time specified in this chapter, it will be sufficient, though not sent in accordance with the requirements of this section,"

and *McAndrew* v. *Radway* (34 N. Y. 511) and Tiedeman on Commercial Paper (§ 338) announce the rule to be that "the actual receipt of the notice in due season cures all defects."

Even if there had been a defect of notice it could be waived, either before the time of giving notice had arrived or after an omission to give due notice (Neg. Inst. Law, § 180), and it seems to us that the resolution of June 3, 1922, is a complete waiver of any defect in either the manner or time of giving notice.

The affidavits which were filed in opposition to the motion are by one Clarkson, an attorney of record for the defendant, but actually the attorney for the Partola Manufacturing Company, to whom the funds raised on these drafts were originally paid. It is apparent from the moving affidavits that the Partola Manufacturing Company is the indemnitor of the Bankers Trust Company which is the guarantor of this defendant and the Partola Company will ultimately be required to pay back this money if the Bankers Trust Company is required to pay defendant here under its guaranty. The affidavits of Clarkson set forth various contentions, most of which are technical, but which may be summed up under these heads: *Firstly*, it is claimed that the bills of lading securing the drafts were delivered by plaintiff to Richards on the acceptance of the drafts, and that, therefore, defendant was released. There is nothing in this claim, since the bills were hypothecated to the bank against payment of the drafts and where the hypothecation is against payment, the holder's right to sell the collateral persists even after delivery of the bills. (*Helburn-Thompson Co.* v. *All Americas Mercantile Corporation*, 180 App. Div. 167.) *Secondly*, it is said that the sale of the collateral at an inadequate price released the defendant. There is neither in the answer, nor in the bill of particulars, nor in the affidavits of Clarkson any evidence or allegation of inadequacy of price, and a right to sell after default is unquestioned, because plaintiff after the indorsement of the bills of lading to it became *pro tempore* the owner of the goods in question, held the title to the goods through the bills of lading, and the merchandise was sold in Shanghai in October, 1920, after notice to defendant, long after default and even after service of the answer. Part of the goods, to wit, the 106 drums of soda, was sold at a price which was more than Richards, the consignee, was to have paid for it. In any event, inadequacy of price in a resale by the holder of bills of lading must be pleaded as a counterclaim, and no counterclaim could have been pleaded, because the resale occurred long after the answer was served, and the answer was not amended to include such plea.

There is another defense to the effect that the defendant was released because the drafts were accepted, payable ninety-three

days after sight instead of ninety days. Apart from the fact that no such defense is pleaded it is obvious that these three days were days of grace, the existence of which in Shanghai is proven by affidavits. There is no denial of the existence of days of grace, except in one of the affidavits of Clarkson in which there is a statement that he does not concede them. This, of course, is unavailing as counter proof. As to the days of grace the law of the place of payment applies to a foreign bill of exchange, such as was drawn here. In *Amsinck* v. *Rogers* (189 N. Y. 252, 258) it is ruled that the law or the custom of the place of payment applies as to days of grace. At common law bills payable at sight are entitled to days of grace, and although grace upon sight bills is abolished by our statute (§ 145), yet the courts here will presume that the common law prevails in the absence of proof of any change by legislative enactments. There is no foundation for the claim that because our State has dispensed with the rule of common law providing for days of grace, and now gives none on negotiable bills, the Legislature of every other State or country has been moved to agree with the abolition of days of grace. In the absence of an overruling statute prevailing at the place of payment or acceptance, the rules of the common law or Law Merchant will govern as to acceptance with days of grace.

The rule is given in *Reed* v. *Wilson* (41 N. J. Law, 29) where in was held that days of grace allowed by the general law merchant are also presumed to be allowed by the laws of another State where a note was payable, and that it was not necessary that the complaint should show by express averments that a note was properly presented according to the laws of the foreign State. The court per WOODHULL, J., said (at pp. 33, 34): " Professor Parsons, after stating that ' most, if not all, commercial countries now require, as a matter of strict right, the days of grace, which are added to the time that a note or bill has to run,' says further, that ' the number of days throughout the United States and England is three, and the presumption in all cases would be that that is the number to be allowed.' In the same connection he adds, ' the number to be allowed in any case, and the regulations concerning them, will be governed by the law of the place where the note or bill is payable; though, as has been seen, the presumption is that three days are allowed, and the burden of proof to show that, by the usage or law of the place of payment, no grace at all, or any number of days other than three, is allowed, is upon the party seeking to avail himself of it.' 1 Pars. N. & B. 396, 398, 399, and cases.

" In *Wood* v. *Corl*, 4 Metc. 203, one ground of defense being that it did not appear that by the law of Ohio three days of grace were allowed, and therefore, it was not shown that a demand on the

third day was right, Chief Justice SHAW, speaking for the court, said: ' We consider it well settled, that by the general law-merchant, which is part of the common law, as prevailing throughout the United States, in the absence of all proof of particular contract or special custom, three days of grace are allowed on bills of exchange and promissory notes; and when it is relied upon that by special custom no grace is allowed, or any other term of grace than three days, it is an exception to the general rule, and the proof lies on the party taking it.' "

The other claims in one of Clarkson's affidavits that plaintiff consented to the non-payment of the drafts and that defendant did not receive copies of the protest until after the action had begun are demonstrated as unfounded as defenses in the action by the proof in the affidavits and exhibits of plaintiff, and the inability of defendant to make proof of them is indicated in its bill of particulars of its various defenses, wherein it sets forth in respect to them, although they are alleged on information and belief, either such a lack of provable matter to support them or that defendant is without knowledge or information sufficient to form a belief with respect to the matters that are alleged in defense.

We will review an order denying a motion for summary judgment where the affidavits show that the defenses and denials raise no issue. (*Lee* v. *Graubard*, 205 App. Div. 345.)

We are of opinion that the order should be reversed, with ten dollars costs and disbursements, and the motion for judgment granted, with ten dollars costs.

CLARKE, P. J., SMITH, FINCH and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.