WILLIAM CUBIT v. LEWIS O'DETT ET AL.

*Ditches—Liability of highway officers for injury to land.*

Highway officers have no more right than private persons to cut drains which will flood the lands of private owners.

The discretion of the overseer of highways, in deciding how and where

| 51 | 347 |
| 62 | 401 |
| 51 | 347 |
| 80 | 110 |
| 51 | 347 |
| 105 | 715 |
| 51 | 347 |
| 106 | 73 |
| 51 | 347 |
| s16ᴺᵂ | 679 |
| f130 ¹ | 6 |
| 51 | 347 |
| s16ᴺᵂ | 679 |
| 133 | ³211 |
| 51 | 347 |
| 138 | ¹514 |

he will distribute highway labor, is limited by the rights of individuals, and he and his assistants are jointly liable for the invasion of those rights.

Trespasses are not excused by good faith, though they may be aggravated by bad faith.

In an action against a highway officer for injury caused by a ditch which he has dug, defendant cannot complain of an instruction that he would not be liable unless the ditch brought upon the plaintiff's land the drainage of a greater area than was drained upon it before.

Error to St. Clair.   (Stevens, J.)   June 22.—October 3.

CASE.   Defendants bring error.   Affirmed.                    .

*Avery Brothers* and *Isaac Marston* for appellants.  Damages for injury to a freehold are recoverable only for the period preceding the action ; and if the wrong continues, successive actions may be brought : Cooley on Torts 619 ; *Cumberland Canal Cor. v. Hitchings* 65 Me. 140 ; *Hatfield v. Central R. R.* 33 N. J. L. 251 ; *Savannah & Ogeechee Canal Co. v. Bourquin* 51 Ga. 378; *Van Pelt v. Davenport* 42 Ia. 308 ; *Bare v. Hoffman* 79 Penn. St. 71 ; one whose freehold is injured by the construction of a ditch, but who can avoid the injury by slight expenditure, is bound to do so : *Hayden v. Cabot* 17 Mass. 169 ; *Loker v. Damon* 17 Pick. 284; *Indianapolis & W. Ry. Co. v. Birney* 71 Ill. 391 ; *McCredie v. Buxton* 31 Mich. 390 ; and can recover only such expenditure : *Kansas Pacific R. R. v. Mihlman* 17 Kan. 224 ; farmers have a right to drain their premises : Angell on Water Courses §§ 108, 337, 338 ; *Gannon v. Hargadon* 10 Allen 106 ; *Williams v. Gale* 3 H. & J. 231 ; Cooley on Torts 577, n. 2.

*Chadwick & Cline* for appellee.   The authorities are liable for flooding one's premises : *Ashley v. Port Huron* 35 Mich. 296 ; so are those who cause water to set back or flow down on another's land : *Grand Rapids Booming Co. v. Jarvis* 30 Mich. 308; 1 Addison on Torts (Wood's ed.) 96 ; Cooley on Torts 479, 580 ; *Miller v. Laubach* 47 Penn. St. 155 ; *Martin v. Riddle* 26 Penn. St. 415 ; *Laney v. Jas-*

*per* 39 Ill. 46; *Livingston v. McDonald* 21 Ia. 160; *Petti-grew v. Evansville* 25 Wis. 223; *Butler v. Peck* 16 Ohio St. 334.

COOLEY, J.  The complaint in this case is that defendants have flooded the plaintiff's land by means of a ditch which they cut along the highway, and which had the effect, while draining their own land lying to the west of him, to cast upon his land a large amount of water which otherwise would not have flowed in that direction.  There are two counts in the declaration, the second only of which requires particular mention.  The allegation of damage in that count is, that by the flooding of the land, and the deposit of sand and other substances thereon, it has been rendered unfit for cultivation and worthless.  In defense it was claimed that what was done in cutting the ditch was rightful, because done under the direction of the overseer of highways; and it was at the same time denied that the ditch carried upon the plaintiff's land any water except such as would naturally have flowed there.

The plaintiff's evidence tended to show that the water did not naturally flow along the route of the ditch from the land of defendants to his own, and that the drain commissioner for that reason had refused to lay out a ditch there when applied to for that purpose.  It also tended to show that the permanent injury to the land, if the flow was to continue, was very considerable.  The evidence to this effect was objected to by the defendants, upon the ground that the flooding, if a wrong at all, was a continuous wrong from day to day, and might be the subject of repeated actions to which the recovery in this suit would be no bar.  Also that the plaintiff has no right to assume that a wrongful flooding will be persisted in, and be permanent.

It probably ought to be presumed that any action found to be an invasion of another's right will be discontinued.  *Bare v. Hoffman* 79 Penn. St. 71.  But there was evidence in this case that permanent injury had been done, which the mere discontinuance of the flooding would not relieve.  Moreover, although this was a case of continuous injury

from day to day, the injury was not attributable to successive wrongful acts of defendants: they had set the waters in motion by digging the ditch, and then, though they abstained from doing anything further, the injury would go on. To assume, therefore, that defendants will not further injure the plaintiff, is to assume that they will proceed to take some positive action to stop the continuous injury. This might be done, perhaps, by a new ditch, which should carry the water away from the plaintiff's land after it had been deposited there; or it might be done by obstructing the existing ditch. A new ditch could not be cut as a mere act of volition on the part of the defendants, for it would need to be cut on the plaintiff's land where they have no right to go except with his consent; and we cannot assume that consent would be given. The existing ditch might be obstructed without going upon the plaintiff's land for the purpose; but as it is not upon the land of the defendants, and they are doing nothing, so far as we know, to keep it open, there may be question whether they are liable from day to day, as a man may be who maintains a nuisance on his own premises. But there is nothing in this case requiring of us an opinion on that question.

The defendants contended that the plaintiff might relieve himself of the continuing nuisance by a small expenditure of money in cutting a new ditch to drain off his land; and that under these circumstances he was entitled to recover nothing for injury caused by the continuous flooding beyond what the cost of such a remedy would be. This contention appealed to the principle that every man is bound to make the injury he suffers at the hand of another as light as possible, instead of aggravating it, or possibly allowing it to increase. *Loker v. Damon* 17 Pick. 284; *Indianapolis &c. R. R. Co. v. Birney* 71 Ill. 391; *Seely v. Alden* 61 Penn. St. 302; *McCredie v. Buxton* 31 Mich. 383; *Kansas Pac. Rw. Co. v. Mihlman* 17 Kan. 224. There was some evidence in the case to found this contention upon, and the judge charged the jury that in estimating the damages they should take into account whether the injurious effects of the

ditch might not be overcome by the construction of others, and whether such other ditches could be constructed by the plaintiff without injury to a lower proprietor. This was intended as a recognition of the principle contended for, and fairly submitted the matter to the jury.

The circuit judge excluded evidence offered by defendants to show that what they did was done under the direction of the overseer of highways. As we understand it one of the defendants was himself the overseer; but the fact is not important. Highway authorities have no more right than private persons to cut drains the necessary result of which will be to flood the lands of individuals. This was shown in *Ashley v. Port Huron* 35 Mich. 296 : s. c. 20 Am. Rep. 629, where many authorities are referred to. The highway overseer no doubt has a discretion in deciding how and where he will expend highway labor; but it is a discretion limited by the rights of individuals, and when he invades those rights, he becomes liable. *Tearney v. Smith* 86 Ill. 391. And when he is liable for a lawless act, all his assistants are liable with him for the consequent injury. Story on Agency §§ 311, 312; *Brown v. Howard* 14 Johns. 119; *Coventry v. Barton* 17 Johns. 142: s. c. 8 Am. Dec. 376; *Fiedler v. Maxwell* 2 Blatch. 552; *Tracy v. Swartwout* 10 Pet. 80; *Smith v. Colby* 67 Me. 169. This rule sometimes, when the agent has acted in good faith and without knowledge of the want of legal authority, may seem to operate oppressively, but it is a necessary and very just rule notwithstanding, and full protection of the citizen in his legal rights would be impossible without it. Absence of bad faith can never excuse a trespass, though the existence of bad faith may sometimes aggravate it. Every one must be sure of his legal right when he invades the possession of another.

Whether the cutting of the ditch caused a larger extent of territory to be drained upon plaintiff's land than was drained upon it in its natural state, was made a question of fact before the jury. The plaintiff gave evidence tending to show that a natural barrier to the flow of the water in his direction from the land of the defendants was cut through

in making the ditch; and in view of this, and other evidence having a contrary tendency, the circuit judge instructed the jury as follows:

"The plaintiff insists that at a point on this quarter-line road there was a natural embankment or rise of land, and that by cutting through this embankment and connecting with the ditch along the west side of the road with the ditch on the portion of the road east of the claimed elevation, that the result has been to increase the flow of water on plaintiff's land, which has injured his crops, carried sand into his ditches and upon his land, and injured the soil by the action of the water standing upon it.

"Upon the part of the defendants it is contended that the plaintiff's land is low, and that a large portion of the surrounding country necessarily drains upon it, and that the effect of the ditch of which the plaintiff complains is only to carry upon the plaintiff's land such water as would naturally flow there; and furthermore, that the ditch upon the west portion of the quarter-line road was not connected with the portion of the ditch on the easterly side of the rise of land by defendants or by persons acting in concert with them.

"It is a general rule that the proprietors of upper or higher lands have a right to the natural drainage of such lands upon those lands that are lower, and when lands are so situate that the water falling or collected by melting snow and ice naturally descends upon them, such lands must suffer, whatever may be the result of the natural discharge of the water of the higher lands upon them; but the proprietors of higher lands are not authorized, by means of ditches or trenches, to increase the flow of water down upon the lower proprietor to the injury of his land. And if you shall determine from the evidence that by reason of the construction of the ditch along the west portion of the quarter-line road and connecting such ditch with that portion of the ditch east of the rise of land claimed to be upon said road that an increased quantity of water has been carried upon plaintiff's land and damaged his crops and premises, and you are satisfied from the evidence that the defendants are responsible for digging the ditch through the rise of land, then, in that event, the plaintiff is entitled to recover such damages as he has proved that he has sustained by reason of the increased flowage of water. In other words, should you conclude from the evidence that prior to 1879 there was a natural rise in the land that obstructed the flow of water

upon plaintiff's premises from that portion of the country lying at the westerly end of the said quarter-line road, in section one, that is termed the 'tamarack,' and that by cutting through this barrier the defendants have caused an increased quantity of water to be discharged upon plaintiff's land, then they are responsible to the defendants for the damage sustained by such an increased flow of water.

"The plaintiff is not obligated to construct ditches for the drainage of any more water than that which naturally falls or flows upon his land, and if the defendants, either by the removal of a natural barrier or the construction of a ditch, have caused water to flow upon his land that would not otherwise have flowed there, then in either event they are liable for the damage resulting from such increased flowage of water."

The fair import of this language is that the defendants would not be liable unless the ditch brought upon the plaintiff's land the drainage of a greater area than was drained upon it before. If we are correct in this, the defendants have no just ground of complaint of the instruction.

The judgment must be affirmed with costs.

The other Justices concurred.