G. H. A. KUNST, Judge.
By stipulation these two cases were heard together, the evidence being the same in each, except as to injuries suffered by claimants and treatment for same, and damages.
Arthur B. Perdue, forty-five years of age, with Dollie E. Perdue, his wife, twenty-eight years of age, started driving in his car, a 1934 Plymouth Coupe, from Bluefield, West Virginia, by way of Pocahontas and Maybury to Coaldale to visit his mother. At about seven o’clock on the drizzly, rainy eve *313 ning of Sunday, January 23, 1937, at a point just north of and above Barlow Tipple, south of Maybury in McDowell county, on a secondary road, known as the Peeled Chestnut Mountain Road, under the control and jurisdiction of respondent, an accident occurred, which claimants allege was due to the negligence of respondent and from which they suffered injuries for which is asked awards of $10,000.00 for Arthur B. Perdue and $5,000.00 for his wife, Dollie E. Perdue, against respondent.
Perdue states, that as he drove north, with car lights fully on, down this mountain road which has a grade of four or five degrees, going very slowly, a car came around the curve, going so rapidly that it passed as he dimmed his lights and applied brake and stopped his car the right front wheel of which, dropped into a hole, broken in the asphalt pavement of the road and caused his car to roll over and over with himself and wife inside, down the hillside, having a grade of about forty-five degrees one hundred and ten feet to a ditch beside the railroad track of the Norfolk and Western Railway. Perdue was found unconscious and he and his wife were taken to the Bluefield Sanatorium where they remained until the 15th day of July, 1937, when he returned to his work as motorcar operator for the Norfolk and Western Railway Company in the Bluefield yards of said company, in whose employ he had been for about nineteen years.
The preponderance of evidence is, that this road had been decreased in width from twenty feet of roadway, consisting of fourteen feet of asphalt pavement with three feet of berm on each side, to a width of from ten to eleven feet by testimony of witnesses and by actual measurement of one witness to ten feet, eight inches, which made a road too narrow for two vehicles to safely pass. That after a period of continuous excessive rainfall, a slide from the hillside filled the ditch with muck, dirt, rock and shrubbery extending to a considerable depth and width over the berm and asphalt pavement, dammed the water flowing in the ditch for a long distance above, causing it to overflow the road, to wash a deep gully *314 down the hillside, to wash away the berm and undermine and break the asphalt pavement from eighteen to twenty-four inches in depth and extending in length from thirty to thirty-six inches. This left a sheer, abrupt hole perpendicular with the surface of the road and several feet in depth; portions of the asphalt pavement could be seen lying in the gully below the break in the pavement.
The place of this accident was at a section of the narrow mountain road, composed of three short connecting curves, the middle one of which reverses the direction of the other two. This break in the asphalt pavement was at the center of the middle curve. That such a condition constituted an extraordinary and unusual hazard, particularly since the evidence shows, that the roadway was elsewhere along its entire extent, approximately twenty feet in width, made up of fourteen feet of asphalt pavement, with three feet of berm on each side. No signal or sign apprised the traveler of this dangerous pitfall, also a slight elevation before reaching it and a dip in the road at that point, caused lights of a car to over-shoot and thus conceal this danger spot.
That such condition at this point had existed for from three to six weeks before the accident herein considered, during which time three similar accidents had occurred. The obstruction which existed at the place of this accident and which caused same and which was left and permitted to exist for such length of time constituted a public nuisance by general law and as defined and declared by sec. 1651 (1) of the code of 1937 and 1939, among which are listed landslides and any other thing which will prevent the easy, safe and conve dent use of a public road for public travel placed and left within the limits of such road.” Acts 1921 c. 112, Sec. 184, 185; Code 1923 c. 43, Sec. 184, 185; 1925 c. 17, Sec. 185. Clay County Court v. Adams, 109 W. Va. 421-429, 155 S. E. 174.
That respondent’s officials and agents in failing to discover such conditions and permitting same to exist and continue, *315 especially after such repeated and emphatic notifications of their existence by the continued accidents here, failed to exercise the care required of them and rendered respondent guilty of negligence and that by reason of such negligence the discretion vested in it was abused and injury sustained by claimants for which awards are made.
The court of claims’ jurisdiction is limited to claims against the state and its agencies.
Two well established legal doctrines determine their immunity from liability.
•1st. That sovereignty must not be violated — that since they only perform governmental functions and are given discretion in such performance no liability arises by reason of their misfeasance, or nonfeasance unless assumed by statute.
2nd. That they are not liable for the misfeasance or non-feasance of the agents representing them, who are held to owe a duty to the public and not to an individual.
No liability was imposed by common law. No statute of this state imposes liability, such liability has not been assumed by the state.
The constitution prohibits suits against the state.
A statute expressly provides that the state shall not be made defendant in any proceeding to recover damages because of defective construction or condition of any state road or bridge.
Hence if there were no restrictions, inhibitions or limitations, constitutional or statutory, of suit against the state or its agencies there could be no recovery in the courts because no liability exists and the court of claims would have no jurisdiction of any claims ex delicto and particularly of this *316 claim and this is the argument advanced in opposition to the granting of an award, and if such is the correct construction of the act creating the court of claims the jurisdiction conferred as to ex delicto claims is futile and the court of claims has a most limited jurisdiction.
Sec. 12 of the Court Act states that:
“The Court shall, in accordance with this article, consider claims which, but for the constitutional immunity of the state from suit, or of some statutory restrictions, inhibitions or limitations, could be maintained in the regular courts of the state.” (Italics ours.)
Because of no assumption of liability by the state by statute, no liability exists against the state for the nonfeasance or misfeasance of the state or its agencies.
Inclusion in this statement of its jurisdiction the phrase, in accordance with this article, calls attention to the fact that this statement is only a part of the exposition of jurisdiction intended and contemplated by the act, for if this were all, the court of claims could not even consider a claim ex delicto. Such a statement, taken alone, would not need any construction or interpretation, its meaning would be literally that; for no claim could be made in the courts of the state if there were no liability. When the act is considered in its entirety and the other provisions of the act as to its jurisdiction are read with this provision, in order to get the true purpose and intent of the Legislature, the act has an entirely different meaning, for it expressly provides that the court shall have jurisdiction of claims ex delicto.
The great weight of authority generally and the law of this state is that no liability exists against a state or its agencies for the misfeasance of its agents unless the state has by statute assumed such liability.
*317 No legislative act of this state has assumed such liability, hence there is no liability imposed by the law of the state or the decisions of its courts for the court of claims as an investigating instrumentality of the Legislature to report. To make an award liability is not essential as in a judgment or decree. The act expressly states that no liability is imposed upon the state or its agencies by a determination of the court of claims approving a claim and recommending an award, unless the Legislature has previously made an appropriation for the payment of a claim, subject only to the determination of the court.
The court is not invested with and cannot exercise any judicial power in the sense of article eight of the constitution and its determinations are not subject to an appeal or review by a court of law or equity, created by or pursuant to article eight of the constitution. Hence it is manifest that the Legislature reserves to itself the power or prerogative of determining whether or not it shall assume liability by making an appropriation for the payment of a claim, and the duty of the court of claims is to determine whether the claim is just and proper, and is one which the state should in equity and good conscience pay and so recommend by its award, that assumption of liability be made by the state by an appropriation of the Legislature for its payment.
Good authority asserts that the state and its agencies being corporations can commit tortious acts, that when they have failed to exercise the care required of them in the exercise of their duties; abused or failed to exercise the discretion accorded them in the exercise of their governmental functions and their errors of judgment been so great as to constitute negligence.
“The state, or general government, may be guilty of individual wrongs, for while each is a sovereignty, it is a corporation also, and as such capable of doing wrongful acts. The difficulty here is with the remedy, not with the right. No sovereignty is subject to suits, *318 except with its own consent. But either the consent is given by general law, or some tribunal is established with power to hear all just claims. Or if neither of these is done, the tort remains, and it is always to be presumed that the legislative authority will make the proper provision for redress when its attention is directed to the injury.” Cooley on Torts, Students’ Edition by John Lewis (1907), Sec. 29, page 82.
“Although it is not liable therefor unless it has voluntarily assumed such liability, the state has capacity to commit tortious acts . . . where the state has failed to exercise the care required of it, and thereby an injury is sustained, it is guilty of an act of negligence.” 59 Corpus Juris 193, 194, Sec. 336; Cook v. State, 201 N. Y. S. 834, 121 misc. 864; Tiggerman v. State, 228 N. Y. S. 576, 132 misc. 45.
“A state is not liable for the torts of its officers or agents in the discharge of their official duties unless it has voluntarily assumed such liability and consented to be so liable, the only relief the aggrieved person has in such case being an appeal to the legislature; and, in the absence of a statute so providing, a state cannot be forced to compensate a private individual for damages to property from the construction or operation of public works, but the legislature may make an appropriation for this purpose.” 59 Corpus Juris 194 Sec. 337.
“While highway officers have only such powers .as are conferred by statute, yet, their functions being governmental, within the limits of the jurisdiction conferred on them by law, highway officers have a reasonable discretion; and courts will not interfere with them in the lawful exercise of such jurisdiction, unless it is abused; and it has been held that such discretion stops where absolute rights of property begin.” 29 C. J. 574, Sec. 298; McCord v. High, 24 Iowa 326; Cubit v. O’Dett, 51 Mich. 347, 16 N. W. 679.
“In exercising their discretion they are not justified in acting . . . with a clear abuse of discretion or without any discretion at all.” 29 Corpis Juris 574, *319 Sec. 298; Wadsworth v. Middletown, 94 Conn. 435, 441, 109 A 246, 248, 249; Com. v. Day, 69 Pa. Super 541.
“Where they have acted outside of any suggested benefit to public travel and destroyed property they cannot plead governmental immunity, their act is clearly illegal.” Wadsworth v. Middletown, 94 Conn. 435, 441, 109 A 246, 248, 249.
“. . . no action lies . . . for mere inadvertence or error of judgment, unless such error is so great as to constitute negligence, , . .” 29 Corpus Juris 591 Sec. 319; North Vernon v. Voegler, 103 Ind. 314, 2 N. E. 821.
In Chandler v. Davidson County, 142 Tenn. 265, 273, 218 S. W. 222, it was held, that in acting for the state in constructing a road, the state had delegated its authority for that purpose, but the state had not authorized it to commit a nuisance, because such an act is not an attribute of sovereignty.
A corporation, public or private, can only act through or by its officers or agents. While a public corporation acting within the scope and limits of the governmental functions and powers granted, or entrusted to it is sovereign and possesses immunity from liability because of such sovereignty, when it acts in excess thereof and does not exercise the care required of it and is guilty of negligence, or has abused the discretion vested in it or exercised none at all, as the commission of a public nuisance, an illegal act, its action is outside of and beyond its governmental function and its immunity does not follow.
Sovereignty was not granted for that purpose, and hence liability is incurred, immunity only being commensurate with the authority granted.
Under what is by the court act, called the shortened procedure, all claims not exceeding one thousand dollars, con *320 curred in by the state agency concerned, and approved by the attorney general as one that “in view of the purposes of this article” should be paid, the court shall consider the claim informally upon the record submitted; consisting of all papers, stipulations and evidential documents required by the rules of the court prepared by the state agency concerned. If the court determines that the claim should be entered as an approved claim and an award made it shall so order and shall file its statement with the clerk. If the court finds that the record is inadequate, or that the claim should not be paid it shall reject the claim. The very great majority of the claims ex delicto which have been presented for consideration of the court were claims against the state road commission and arose from claims for damages occasioned by the negligence and misfeasance of the officers and agents of that state agency.
By this shortened procedure, the factual matters involved and the negligence alleged were admitted by the agency concerned and the claims approved by the attorney general as just and proper claims and determined by the court to be approved claims and awards made.
The same laws apply to claims under the shortened and to the claims under the regular procedure.
The only material difference between these claims and the procedure, being the amount of the claim and the admission of the misfeasance by the agency concerned in the shortened procedure and its determination by the court under the regular procedure. Hence here are many precedents and rulings determined by the court, and to adopt any other rule or contrary legal doctrine would overrule or reverse all of these decisions.
To overrule these decisions and precedents or to determine claims of one class governed by different laws from claims of the other class would be a total disregard of the law of stwre decisis; would create the greatest confusion and bring an un *321 certainty and indefinite status as to the laws regulating the action of the court as would be most destructive of its efficiency and usefulness and of its standing as a tribunal worthy of the respect of those having any relations with it.
What criterion determines a. claim as just and proper and one which the state should in equity and good conscience pay?
For practically the lifetime of the state it was regarded as “equity and good conscience” that there should be ari assumption of liability by the county courts of the state, they having the duty of constructing and keeping in repair the highways of the state, to compensate in damages any person suffering injury from their negligence in the performance of such duty.
In the majority of the states of the union such liability has been assumed by the state. Since the repeal of the statute assuming liability by the county courts, the Legislature has by appropriation assumed such liability and compensated the individual.
There could be no better criterion for the court in determining what is a just and proper claim which a state should in equity and good conscience pay than the Legislature’s own conception and interpretation. Certainly the Legislature did not waive its constitutional and statutory immunity from suit to give the court of claims jurisdiction to hear and determine a just ex delicto claim, with no possibility of its making an appropriation in accord therewith.
A statute provides that “any person injured by the violation of a statute may recover from the offender such damages as he may sustain by reason of the violation.” Code 1849 C. 148 Sec. 6; Code 1860 C. 148 Sec. 7; Code 1868 C. 103 Sec. 8; Code 1923 C. 103 Sec. 8; Code 1931 C. 55 Sec. 9.
Should the state have less regard for its obligation than the individual or be held to a less degree of responsibility?
*322 “Independently of express constitutional restrictions, the Legislature can make appropriations of money whenever the public well-being requires or will be promoted by it, and it is the judge of what is for the public good. It can recognize claims founded in equity and justice in the largest sense of those terms.” Richmond v. Pace, 127 Va. 274, 103 S. E. 647.
The uncontradicted testimony shows that claimant, Arthur B. Perdue, suffered severe injuries entailing hospital and doctors’ services amounting to $443.00; that he lost twenty-six weeks of work at the time he was earning $44.80 per week; that his automobile was wrecked and badly damaged; that he had an ambulance charge to pay, and these facts taken into consideration with the nature of his injuries, his pain and suffering, justify in our opinion' an award of three thousand dollars ($3000.00).
The claimant Dollie E. Perdue had hospital and medical expenses amounting to $339.00; was unable to attend to her household duties for several months; sustained injuries that perhaps are permanent in their nature; suffered much pain and physical inconvenience for all of which we make an award of one thousand five hundred dollars ($1500.00) as herein-before stated.