NEMETH *v.* COUNTY OF GENESEE.

1. APPEAL AND ERROR—NONJURY CASES—PREPONDERANCE OF THE EVIDENCE.

The Supreme Court does not reverse the decision of a trial court in a nonjury case as to a finding based upon an issue of fact, where the determination reached is not contrary to the preponderance of the evidence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error §§ 817, 849, 895, 896, 899.
[2, 4] 17 Am Jur, Drains and Sewers § 28.
[2, 4] Personal liability of officers of drainage or highway districts for negligence of subordinates or employees causing damage to person or property. 61 ALR 300.

2. Drains—Commissioners—Due Care—Mistake in Judgment.

A drain commissioner has the duty of exercising ordinary care and judgment in the discharge of his official duties but he is not an insurer that any particular project undertaken by him on petition and carried out pursuant to specifications prepared by competent engineers would prove completely effective and he is not liable for a mere mistake in judgment.

3. Same—Depressions in Surface of Land.

It is a matter of common knowledge that low, flat land with some depressions in which surface water collects after heavy rains presents difficulties with reference to drainage.

4. Same—Cleaning Out Drain—Culverts—Negligence—Evidence.

Defendant drain commissioner was not guilty of actionable negligence in the performance of his work of cleaning out a drain pursuant to petition filed, where evidence shows that some of the damage to plaintiff's crops was due to the failure of a different and lower drain to take care of water from plaintiff's lands after heavy rains, the volume of water in the drain cleaned had not been materially increased and it does not appear there was any necessity for increasing size of culvert under highway adjoining plaintiff's lands through which the water passed.

Smith, Edwards, and Black, JJ., dissenting.

Appeal from Genesee; Gadola (Paul V.), J. Submitted June 25, 1956. (Docket No. 79, Calendar No. 46,382.) Decided October 1, 1956.

Case by Joseph Nemeth, Jr., and Stefania Nemeth against the County of Genesee, a municipal corporation, and Bernard O'Brien, its drain commissioner, for damages arising from flooding of land. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Leon A. S. Seidel (Richard C. Fruit,* of counsel), for plaintiffs.

*John G. David,* for defendant Genesee County.

*McTaggart & McTaggart,* for defendant drain commissioner.

BLACK, J. (*dissenting*).   It is said, in *Chapel* v. *Smith,* 80 Mich 100, 114:

"If Smith, as drain commissioner, had given plaintiff a proper outlet, there would probably have been no trouble.   Certain it is that the drain commissioner could not, under the law, in laying a public drain, empty water that did not belong to Chapel upon him without providing a proper outlet to take it off his premises.   If he did so, he would be responsible for the damages.   *Cubit* v. *O'Dett,* 51 Mich 347, 351; *Ashley* v. *City of Port Huron,* 35 Mich 296 (24 Am Rep 552)."

Plaintiffs, owners of a farm in Genesee county, traversed by the Sheridan drain at lower (western) end thereof, brought this suit against the defendant drain commissioner and the defendant county of Genesee to recover for crop damages they say were suffered in successive years on account of negligence of the defendant drain commissioner.   Counting upon the quoted rule and supporting language of *Cobinco* v. *Robinson,* 243 Mich 170, they insist that the drain commissioner went ahead with a statutory project of widening, deepening and extending Sheridan drain, without compensating enlargement of the outlet thereof, and that such action resulted in a continuing and actionable trespass.   The outlet complained of is the presently described culvert.

The case was tried to the court, Honorable Paul V. Gadola, circuit judge, presiding, and resulted in finding and judgment for defendants.   Plaintiffs have appealed.

The general direction of Sheridan drain flow is from east to west.   It passes from plaintiffs' said farm at western boundary thereof on north-south McCumsey road by means of the mentioned culvert. After passing through the culvert such flowage makes a sharp right-angle turn and proceeds north along the west side of McCumsey road 618 feet to a

point where it empties into southwestward flowing Tryon-Pine Run drain. Plaintiffs' declaration does not concern us with maintenance of or work done on this last-mentioned drain and our attention is confined to that which the defendant public authorities did in 1946 from the headwater drainage areas of Sheridan drain down to and including the mentioned culvert. Such culvert consists of a 60-inch (diameter) metal cylinder. It was installed as we shall see in 1946, prior to work on the drainage project now to be considered.

Sheridan drain was established in 1900. April 22, 1946 a statutory petition for "cleaning out, deepening, widening, straightening, extending and tiling, starting at the outlet" (of Sheridan drain), was filed with the defendant drain commissioner.* Due proceedings followed in pursuance of the petition. The project was started and completed in the same year, "after election." During the summer of 1946 the county road commission, acting without participation of the drain office, proceeded to remove and replace the then existing culvert forming the outlet of Sheridan drain at McCumsey road. Such culvert, made of concrete, had become "dangerous for road traffic" according to an assistant county road engineer.

The defendant drain commissioner definitely knew of the road commission's action when he assumed

---

* While the record is uncertain as to the fact and amount of drainage area that was added to Sheridan drain by the 1946 project, Wesley D. Collins, the engineer in charge of such project, testified:

"I don't remember about extending it farther east, there was a branch put on it. I don't know if that was in the original survey or not. The object was to take water from land farther east, it drained more land, the new ditch than the old one. * * * The idea was to drain more land farther east."

The "branch," to which Mr. Collins referred, is shown by Exhibit B (the 1946 drain project maps) as being 800 feet in length.

office January 1, 1949,* and the point is made by plaintiffs that he at no time has taken steps to increase the volume size of such culvert to handle the allegedly increased burden of water flowing from the enlarged drainage area.

*First:* Certain of plaintiffs' testimony is undisputed. It establishes that the new metal culvert was and is slightly smaller with respect to volume than the original concrete culvert. It shows, also that the new culvert was installed with a tilt upward at west end of about 6 inches—whereas the tilt, if any, should be downward with direction of flow. Further, it was shown without dispute that the new culvert was and is based upon broken pieces of concrete "mashed" out of the original concrete culvert; that the bottom of the new metal culvert was and is some inches above the bottom of the deepened drain, and that plaintiffs' lands were never flooded prior to 1947.

Defendants' answer to this proof is addressed to the law of physics. They say with supporting testimony that a 60-inch circular tube will handle slightly more water under any given conditions than will a rectangular shaped tube 4 feet wide and 5 feet high (such were internal dimensions of the replaced culvert).

The net result of all this testimony is obvious. A question of fact as to negligent construction of the outlet, and maintenance thereof afterward, was presented. The question may with propriety be refined to this: Should the defendant drain commissioner, as a matter of good engineering practice, have provided a substantially larger volume outlet at Mc-Cumsey road, either as a part of the project or thereafter? If, under the proof and rule of *Chapel,* such

---

* Defendant O'Brien held the office of drain commissioner in and prior to 1946 but not in 1947-1948. He resumed tenure January 1, 1949 and continued such tenure through trial of this case.

larger outlet was fairly required, then he is personally liable to paintiffs for causally-connected damages. Further, the defendant county may in such circumstances be liable with him. This latter subject will be considered later.

*Second:* The next question is whether negligence and resultant trespass, if established as a matter of fact, was causally connected by proof with the damages claimed by plaintiffs. The latter insist that failure of a proper outlet at McCumsey road caused portions of their fields to be regularly inundated with resultant crop losses allegedly suffered as follows: For the year 1948 they allege losses amounting to $6,695; for the year 1949 they allege losses in the amount of $320.80; for the year 1950 they allege losses in the amount of $2,814; and for the year 1951 they allege losses in the amount of $300.

We hold that a question of fact, as to causal connection between negligence and trespass, if any, and plaintiffs' asserted crop losses, was fairly presented by the proofs.

As to the first year (1948), the trial judge ruled on fully supporting evidence that no culvert of any size at McCumsey road would have prevented plaintiffs' losses as claimed for such year considering unprecedented county-wide inundation. He said:

"The matter being solely a question of fact, the court is of the opinion that the plaintiff has failed to prove to the satisfaction of the court, by a preponderance of the evidence, that any flood or any damages to crops or any water conditions on his farm were caused by any acts of the defendants in this action, but they were, as we understand, an act of God, in other words, too much rain. When there is too much rain, no one can take care of the situation. If floods and the water goes off in the course of events as fast as it can run off, but it can't run faster than the outlets. If the drain commissioner or the

county or someone in responsibility could anticipate at any time the volume of water that might come down, there might be some question they should try to take care of the situation, to take care of the water at that time, if they could anticipate what the Lord is going to do in sending rain. So from the standpoint of the facts relative to the law, the court is of the opinion there is no liability on the part of either of the defendants, and so judgment of no cause for action will be entered."

As to the crop losses alleged by plaintiffs as having occurred after 1948, we find ourselves in disagreement with the trial judge. His ruling, that such losses were similarly due to act of the Great Architect, is unsupported by direct, if any, evidence. The judgment below, as to these post-1948 issues, is therefore contrary to the preponderance of evidence.[*]

We would not be understood as holding that the trial judge became obligated to accept plaintiffs' proof of wrongfully caused losses in 1949, 1950 and 1951. He—the trier of facts—had a right to disbelieve such proof in whole in or part even though it be deemed undisputed. See collection of cases in *Cebulak* v. *Lewis,* 320 Mich 710 (5 ALR2d 186). We do hold, there being no direct evidence that such last-mentioned losses were caused by act of the Creator, that plaintiffs should receive due determination of presented issues of fact respecting their damage claims for the years 1949, 1950 and 1951 and that the judgment below rests as to such claims on assigned ground of untenable nature. On this record the Almighty did not cause 4 straight inundations of plaintiffs' fields. The first is the only one that may lawfully be attributed to Him.

The general rule, set forth in 93 CJS, Waters, § 20, pp 630, 631, is an excellent guide toward proper res-

---

[*] See present Court Rule No 64 (1945).

olution of questions of this nature, and we adopt it as follows:

"An extraordinary flood is one the coming of which is not to be foreseen from the natural course of nature, and the destructiveness of which could not have been anticipated and prevented by ordinary foresight, while an ordinary flood is one, the repetition of which, although at uncertain intervals, by ordinary diligence could be anticipated. The test whether or not a flood is such as to be deemed an act of God apparently is whether after considering the laws of hydraulics, the natural formation of the country, ordinarily prevailing climatic conditions, the character of the stream, its habits and history, to the extent of learning its probable behavior under conditions which experience has shown are likely to recur, and the volume and velocity of tributary streams, a prudent man would have anticipated it. The fact that similar floods had occurred has been held to tend strongly to show that they were not so extraordinary and unusual that they might not reasonably have been expected to occur."

*Third:* Since the question may arise at retrial, on possible resolution in favor of plaintiffs of precedent questions of fact noted above, we refer to *Maffei* v. *Berrien County,* 293 Mich 92, cited by defendants, and *Rogers* v. *Kent Board of County Road Commissioners,* 319 Mich 661, cited by plaintiffs. On rehearing in the last-mentioned case it was said (pp 673, 674):

"I agree that the trial court erred in that respect (that there was no basis for finding of trespass and that the defense of governmental immunity was applicable), and that if the proofs adduced by the plaintiff should warrant, the plaintiff should have the right to go to the jury on the ground that the defendant (county) might be held liable in damages for a continuing trespass."

*Maffei* does not consider the question of recovery on continuing trespass. *Rogers* does. The facts here, as in *Rogers,* similarly warrant determination whether the defendant county may be held responsible to plaintiffs for continuing trespass occurring if at all in 1949, 1950 and 1951.

The circuit court's judgment, insofar as it determines that defendants are not liable to plaintiffs for the alleged crop losses of 1948, is affirmed. As to plaintiffs' claimed losses of 1949, 1950 and 1951, the judgment should be reversed for partial retrial of issue whether one or both of the defendants are liable to plaintiffs on account thereof.

No costs of this appeal should be allowed. Circuit court costs should abide final result of the case.

SMITH and EDWARDS, JJ., concurred with BLACK, J.

CARR, J. The judgment rendered by the circuit court in this case should be affirmed. The trial judge, hearing the controversy without a jury, concluded from the proofs introduced in open court that the plaintiffs had not established the right to recover damages from the defendants, or either of them. On the record before us it may not be said that the determination reached is contrary to the preponderance of the evidence. Under such circumstances this Court does not reverse. *Meyers v. Fort,* 344 Mich 312; *In re Granville Estate,* 345 Mich 495.

During the year 1900 the Sheridan drain was constructed in Genesee county, crossing the farm now owned by the plaintiffs and draining the south portion thereof. Then, as now, surface waters from the north part of said farm flowed into the so-called Tryon drain, into which the Sheridan drain empties after crossing a public highway, now a county road known as McCumsey road, which abuts or is in close proximity to the west line of plaintiffs' property.

In 1946 a petition was presented to the defendant drain commissioner asking that the Sheridan drain be cleaned out. The project was determined to be necessary and plans and specifications for the doing of the work were prepared by engineers whose ability is not challenged in this case. Such plans were followed. It does not appear that the drain commissioner is charged with having deviated therefrom in any respect. Plaintiffs' alleged cause of action rests on the theory that the commissioner did not properly perform his duty in that a sufficient outlet for the drain at the point of passage through the McCumsey road was not provided.

For some time prior to the events giving rise to the instant case the waters collected by the drain were carried beneath the McCumsey road by means of a concrete culvert 4-1/2 feet square. Such was the situation shown as existing in 1936 although it does not appear from the record whether or not the concrete culvert was installed when the Sheridan drain was originally constructed. Plaintiffs averred in their declaration that it was adequate to take care of the water flowing through the drain prior to the cleaning-out project. The plans and specifications for such project did not contemplate a change but the board of county road commissioners, apparently for reasons connected with highway maintenance, took action in 1946 to remove the concrete culvert and to replace it with a tubular culvert 5 feet in diameter. It is claimed on behalf of plaintiffs, and this appears to be the gist of their alleged cause of action, that this new culvert was not adequate and that it was the duty of the drain commissioner to replace it with a larger structure. An engineer for the county road commission testified that while the tubular culvert was a fraction of a square foot in cross area less than the concrete culvert that it replaced it afforded a better passageway for water,

expressing the opinion that, because of such fact, it was more effective.

Plaintiffs alleged in their declaration that during the 4-year period beginning with 1948 they sustained damage because of the failure of surface water to drain from their farm after heavy rains, thus causing injury to growing crops. The record clearly indicates that in the latter part of June, 1948, an exceptionally heavy rainstorm occurred, causing streams to overflow their banks and overtaxing both the Tryon and the Sheridan drains. In each of the 3 succeeding years some damage was caused to plaintiffs, as they claim, as the result of a rainstorm with more than ordinary precipitation. Some of the witnesses testifying as to the conditions referred to the results of these storms as "flash floods."

It clearly appears from the proofs that much of the damage that plaintiffs claimed to have suffered was caused to crops on the north portion of their farm. As before noted, surface water from this land flowed naturally into the Tryon drain. No claim was made by plaintiffs in their declaration that the defendant commissioner was negligent in not enlarging that drain. Apparently such a project was undertaken in 1950, presumably initiated by petition filed in accordance with the statute. However this may be, any injury that plaintiffs may have sustained because of the insufficiency of the Tryon drain is not involved in this case. Rather, their cause of action rests entirely on the theory that the defendant drain commissioner was guilty of an actionable wrong because of his failure to take action to remove the culvert installed by the board of county road commissioners and to replace it with a larger culvert.

Under the generally recognized rule, the duty rested on defendant commissioner to exercise ordinary care and judgment in the discharge of his official

duties. However, he was not an insurer that any particular project undertaken by him on petition and carried out pursuant to specifications prepared by competent engineers would prove completely effective. He is not liable for a mere mistake in judgment. *Cobinco v. Robinson*, 243 Mich 170, 173. There is nothing in the instant case to justify a conclusion that he acted recklessly with reference to the cleaning out of the Sheridan drain. It is a fair inference that the engineers who prepared the plans for the work, and likewise the engineers of the county road commission who supervised the installation of the tubular culvert, did not at the time consider that a larger culvert should be put in beneath the highway.

It is in evidence that plaintiffs' land was, generally, low and flat, with some depressions in which surface water collected after heavy rains. It is a matter of common knowledge that land of such character presents difficulties with reference to drainage. It is in evidence also that crops of the character that plaintiffs say were damaged may in certain stages of their development suffer deterioration from standing water even if remaining therein for a brief period only. On this record it is wholly a matter of conjecture as to the extent of the damage to plaintiffs' crops that would have resulted if the Sheridan drain had not been cleaned out at all, or if a larger culvert had been installed beneath the McCumsey road. It is somewhat significant in this respect that in their declaration plaintiffs alleged damage to crops during the spring of 1946 which, as the proofs indicate, was before the execution of the project of which they now complain. Under the testimony of several witnesses, some of whom were produced by the plaintiffs, it is apparent that the greater part of their damage was sustained on that portion of their farm from which surface water naturally

flowed into the Tryon drain, and the proofs also indicate that on occasions, particularly during the heavy storm in 1948, the inability of the Tryon drain to take care of the water from the Sheridan drain was largely responsible for the situation that existed.

Plaintiffs alleged in their declaration that the drainage district had been materially enlarged, as a result of which the volume of water in the drain had been increased. The trial judge came to the conclusion that there was no material enlargement and the proofs fully support the finding in this respect. A witness who worked on the cleaning out of the Sheridan drain testified that the project went some 13,000 feet *beyond plaintiffs' farm.* This may not be interpreted to mean that the drainage district was extended by any such distance. It is apparent from the record that the drain as originally constructed began some considerable distance southeast of the farm that plaintiffs subsequently acquired. The same witness testified quite specifically that the drain as cleaned out "did not drain a bigger district." This testimony is supported by that of other witnesses who were in position to speak with certainty as to the actual fact. Quite probably the cleaning out of the drain facilitated the flow of water therein, but such result would merely have tended to expedite the removal of water from the surface of the land. It may be assumed that this was one of the purposes, if not the sole purpose, of the project.

Without discussing the situation in further detail, we think the trial judge correctly determined the controlling factual issues before him. The proofs do not indicate that the defendant drain commissioner was guilty of actionable negligence in the performance of his work with reference to the Sheridan drain. He cannot be held to have foreseen weather conditions that would result in subsequent years

when "flash floods" occurred as the result of heavy rainfall. Neither does it appear that the damages that plaintiffs have set forth in the bill of particulars attached to their declaration resulted from defendant commissioner's failure to install a larger culvert beneath the McCumsey road. In other words, the proofs fail to show that plaintiffs have been damaged because of any breach of duty on the part of defendant commissioner, or of Genesee county. As in *Cobinco* v. *Robinson, supra,* the controlling issues presented are factual in nature and the conclusion reached by the trier of the facts should not be disturbed. Other questions argued by counsel do not require discussion.

Affirmed, with costs to defendants.

DETHMERS, C. J., and SHARPE, BOYLES, and KELLY, JJ., concurred with CARR, J.